The Court took time to consider, and afterwards the Judg. es delivered their opiuions seriatim.
O’Neall, J.
In these cases, we have been called on to discharge the high trust committed to us by the Slate, of deciding upon the constitutionality of the acts of the Legislature. This is at all times a duty to be discharged cautiously and tenderly ; but, at the same time, independently and fearlessly.— At a time like the present, when the waves of popular fury and party strife are continually breaking upon the very walls of the Temple of Justice, it is a duty not to be sought; but, at the same time, when it comes unbidden, it is not to be shun. *210 ed. I think it was' the remark of Lord Mansfield, that a popularity which had to be followed, was not worth the pursuit;' and that it was only worth having when it followed us. This is true, and we know from experience, that a popularity which is based on caprice, and not merit, is like the butterfly of one of our brightest summer days; it m'ay have all the glories of light and life for a time, but its time is but a day, and it is gone forever, never to be resumed. On the other hand, a popularity which results from a fearless discharge of duty in a time of peril, is like the sun; it may be veiled and obscured for a time by clouds; but it will at last dispel them, and shine the more brightly from its past obscuration. These remarks, I may be told, are the mere flourish of the rhetorician, and not suited to the sober dignity of the Bench, where words should be weighed in the balances. I shall not dispute about the merit or propriety of these prefatory remarks : if they are so expressed as to be understood, they will have answered my purpose; for I trust, that without any impropriety I may be allowed to refer to them, as the true exponents of an honest heart and firm purpose; if error should be its accompaniment in the discharge of this present duty, it will arise from a defect of judgment and understanding, and not from any want of patriotic devotion to that State, which gave birth to, and to that people, who have showered favors, honors and benefits upon me.
Having said this much as introductory to that legal judgment which I have formed, I shall proceed to state the reasons which have led me to conclude, that the oath contained in, and prescribed by the act of the 19th December, 1833, entitled “An act to provide for the Military Organization of this State,” is unconstitutional.
It is first necessary to understand, what is Allegiance in these United States, and to whom it is due. I admit, that in the feudal system it arose out of the tenure by which land was holden from the Lord paramount. It was the duty of the vassal or liege, to render all the services which might be incident to the estate: they were all summed up in fidelity to the person of the sovereign or King. This was the bond which never could be broken, because it took its origin in the connexion which originally existed between the serf and the soil of his birth. It was hence that allegiance was held to be perpetual: it was the invisible cord which held the subject to the King, and drew him from every portion of the habitable globe to the feet of his master. Is this the sense in which republicans of the present day desire allegiance to be understood 1 Do we owe a perpetual allegiance to South Carolina, because we happen to be born within her limits ? If we leave her and seek *211 quiet and repose in the wilderness of the New World, do we still owe fidelity to her? and has she the right to drag us from the caves and forests of the far west, even beyond the Rocky Mountains, and compel us to strike in her quarrel, because she bids vs? If this be the sense in which it is now to be understood, it is very different from the sense in which it was understood by the care-worn pilgrims of Liberty, who brought their offerings to the Temple of the Constitutions of the United States and this State. Because the word allegiance originated out of feudal tenures, is no reason why we should give it the- precise feudal meaning. Many a noble river may be traced back to some marsh, from which the water scarcely creeps: so, many a noble institution of liberty may be traced, through successive. ages, to some rude notion of individual freedom and protection, bearing, perhaps, no resemblance to that now in use. This is the case with allegiance, as it will, I trust, be seen in the progress of my efforts, humble as they may be, to shed light on this perplexed question.
The history of England shews that the word is not even understood in her unchanging government of King, Lords and Commons, m the sense in which it originally was. In the days of the Conqueror and his descendants and successors, to the time of Charles I, it was the tie of fidelity and obedience to the person of the King. May I be permitted here to say, it was the fidelity and obedience forced upon the Saxon subjects of the Conquoror at the point of the sword, and rivetted upon them as manacles and chains, by the Norman King and his Barons? One of its fruits then was to bid and compel the free spirit of the Saxon to meditate in darkness at the sound of the curfew. Do we claim our notions of allegiance in this free country, as arising from this age-of slavery ? I would as soon say that darkness was the parent of light, because the latter merges from the former.
In the revolution which sent Charles to the scaffold, and his sons and cavaliers into exile, and gave power to the often ridiculed and contemned Roundhead's, to whom was allegiance due ? The protector Cromwell and his generals would have laughed to scorn the idea that it followed their exiled Prince into foreign lands ; and that it was perpetual and indissoluble. They would have pointed to their bloody swords, and said, “ with these, we cut the Gordian knot, which we could not untie.” They would have said truly, their allegiance was then due to the Parliament, as the representative of the people, in whom “ all power is vested,” and “ from whom it is consequently derived.”
The second revolution, which drove forever the tyrant race *212 ^ie ®tewai'ts L°m the throne of England, placed allegiance there, upon the footing, that it was due to the King, not as the Guelph, but as the King of the English people.
It is obedience to him, as, the origin through which their ,iaws emenate, and by which they are also to be executed. It is true, from his fancied divine right, (I suppose) as well as his civil rights, as hereditary Governor of the English people, this allegiance is said to be perpetual — and that it can only be dis. sojyecj jjy jjjs conger. In other words, once a subject, always a subject, is the notion which declares allegiance to be perpetual.
Our forefathers, when they crossed the Atlantic, and sought in the wilderness, among its savages and beasts of prey, that personal security and freedom of opinion which they could not find at home, were still followed by this phantom of allegiance. In the rugged wilds and mountain fastnesses of Arne-rica, the sturdy republican wanderer, clothed in the skins won by his bow and spear, drinking from the bubliug brook and eating the bread produced by the sweat of his brow, was told that he owed allegiance to the King of England, because he was born his subject. To him there seemed to be no reason in such a requisition; and although for more than a century this was not a disputed point, and obedience was yielded by the Colonies to the English King, yet it was the result of the weak and helpless state of Colonial infancy; it never was recognized to the full extent claimed, by the young and growing States, with in 1776 dared to be free.
In our Revolution and Declaration of Independence, this notion of perpetual allegiance was repudiated and rejected.— It was then said, “We hold these truths to be self-evident; that all men are created equal; that they are endowed by their Creator with certain unalienable rights; that among these are life, liberty and the pursuit of happiness. That to secure these rights, governments are instituted among men, deriving their just powers from the consent of the governed; that whenever any form of Government becomes destructive of these ends, it is the right of the people to alter or abolish it, and to institute a new government, laying its foundations on such principles, and organizing its powers in such form, as to them shall seem most likely to effect their safely and happiness.” From this time and from this instrument, I think that allegiance, in its feudal sense, or in that in which it is understood in the English limited monarchy, became wholly inappropriate to our complex form of Government. I shall have occasion hereafter to develop'e this idea more fully.
We all concede in this country, that all power is originally *213 iu the people; that is, they alone can rightfully authorize persons, as their Governors, to exercise the right to rule over them as a people, and to restrict their liberty of action, which each man in a state of nature may exercise. But does it follow, that Allegiance is due to the People ? It is due to their govern, ment, whatever that may be. If they arc the government, by assembling as in a pure democracy and passing all laws, it is due to them in that assembled character. It is due to their power, when in exercise and challenging obedience ; but nothing is due to an ultimate right in reversion, which may or may not be exercised. As well might it be said, that Alie-giance is due to a king by possibility, because it is “ the right of the people to alter and abolish the present government,” and in its place to crown a monarch, as it is to claim Allegi anee to the abstract right of revolution. I think one of the counsel said truly, when he asserted that allegiance, in this country, as well as in Europe, was due to the government. It is then emphatically (if there is any such term in proper use in this country,) Allegiance to the People : for the govern, ment is the administration of the peope, it is their will in the form of paramount law, and it is to that our Allegiance is due. Can there be any thing else, to which the fidelity of tho citizens of this State is due ? Treason at common law is said to be the violation of Allegiance. Can there be any treason, in mere matters of opinion 1 If one should deny the ultimate right of revolution in the people of this state, would it be treason against the State ? Clearly not. - But if the peoplo should carry the right into execution, and set up a new form of government, a citizen warring against it would be guilty of Treason. What is the reason, I may be asked, of this distinction ? It is because, in the first case, there is no sovereign command, saying to the citizen, do this duty ; there can be therefore no disobedience. In the other, the duty is demand, ed and is commanded to be discharged, and obedience must follow from every one who lives under the government thus set up.
But it is said that Allegiance is the duty which the citizen, or subject, owes to the Sovereign. Let this definition be admitted, and before we can see what will be its effect, we must understand who is the Sovereign to whom Allegiance is due. I am told that it is the People. I admit it. But it is not to the People in a state of nature, it is to the People in their form of government. It is then that their high behest cannot be questioned. We thus come back, and find that Allegiance is due to the government of the People, as their Representatives, or as the People themselves. It is in this character and res- *214 pent, standing for the people and in their place, the sovereign. But let us test the proposition in another point of view. Break up the government; to whom do we then owe Allegiance Í To the people, is the answer! How are you to fulfil its duties 1 Has one man, more than another, the right to your services ? No ! Can any number short of a majority have the right to control you 1 No! it is only, then, when assem. bled and having given utterance to their will, in the establish, ment of a government, that Allegiance to the people commences. It is the duty of the eitizen to obey, because the people in their government command obedience. If at the organization of the government, one who had objected to its formation, should peaceably withdraw from it and go beyond its territorial limits, would he incur any crime, or owe it any duty ? Surely not. He has exercised his natural rights as a freeman : rights, which the clear heads and honest hearts of the signers of the Declaration of Independence, recognized, and gave to their posterity, as self-evidently true. In any and every point of view in which I am able to consider the subject, Allegiance, in this country, is due io the government of the people. I have, heretofore, and I shall use throughout this opinion, the term Allegiance, because it is the one most commonly used to denote the duty of the citizen to the government. But, I apprehend it is wholly misapplied in the land of Washington and Franklin; or to be exclusively Carolinian, in the land of the Rutledges, the Pinckneys, the Middletons, the Hugers, the Heywards, the Draytons, and the Laurenses. Allegiance is properly the duty which the subject owes to the King, and whether personal or derivative, is an unfit garb to clothe the Republican. It is like putting on the statue of Washington the robe of the Ctesars. Every one knows, that it has no connection with or fitness for republican simplicity. Our duty is obedience to the government of the people : and if there is any other tie existing in this country, I have been unable to discover it; and if I believed there was any other, it would carry with it unimaginable terrors, for the reason that we cannot know our duty, or who has the right to command it.
What is to be understood by the government of the people ? I answer, the constitutions of the State and the United States. They were the government of the people of the State of South Carolina, operating alike, in their respective spheres, silently, but with irresistible authority. To these instruments, as the expressed will of the people in the shape of paramount law, every citizen and officer is bound to yield obedience. Every act of Congress which conflicts with the. Constitution of the United States, is by it annulled and made void: every act of *215 the State Legislature which conflicts with either the Oonsti* tution of the United States or the State, is also void. Why ? Because they have been enacted without the authority of the people, and are therefore usurpations of power, not law. As long as the government remains, these- Constitutions are the authority by which rule is exercised by each branch ; and they constitute the limits beyond which neither is to go. To them, therefore, as the Sovereign power of the people in exercise, and constituting their government, our allegiance, or obedience, is due.
Sovereignty and Allegiance, we are told, is indivisible. Admit the proposition, and what follows ? Simply, that the two Constitutions are the sovereign, aud that our Allegiance is due to them. They must together be sovereign, for together they constitute the entire will of the people, by which the government is to be administered in the Stat<? and in the United States. Each is sovereign in its particular department of rule, for each can overule every thing which is contrary to its particular provisions. All must obey ■ them, and hence, I apprehend it is, that our notion of Allegiance must be formed in this country. That every duty, whieh we owe as citizens, is due to one or the other of these branches of this government, considered as one government,'.is undehiable. For the term citizen implies a government existing, to which a duty is owing, as much as the term subject implies a King to whom subjection is yielded. So far as general reasoning can go, I am hence satisfied that our Allegiance, or obedience, is due and owing to the Constitution of the United States and of the State, and of course to the two governments created by them, and constituting, in a legal point of view, one government in each state, so long as they (the government of the United States and of the State) keep within their respective constitutional limits. Whether this be divided or single Allegiance, it is exactly our condition in point of fact, and it is in vain, therefore, to assert an abstraction, against positive, certain, existing and real duties, which we daily practice and perform.
I will now, I trust, be able to show, from the Legislation of South Carolina, that this is the true doctrine. Before the Constitution of 1787, South Carolina was unquestionably a Sovereign State, and yet, I am satisfied that it was not then doubted that allegiance was due to the United States. Because for the time being, and so long as the articles of confederation stood, that government was a part of the Government of South Carolina, established and having effect only by her compact with the other States. The oath of allegiance to South *216 Carolina was in effect, then, an oath of Allegiance to the United States. I presume that no citizen of South Carolina could then have levied war against tho United States, and not have been declared guilty of treason against them.
We have heard much of the oath of fidelity and Allegiance, which was in use before the ratification of the Constitution of the United States, and have been pointed to the Chancellors’ oath, P. L. 337, and to the oath to be taken by Attorneys on their admission to plead and practice law, P. L. 563, as fur-¡jibing evidence that the State then claimed the exclusive Ah legiance of her citizens. This might be conceded, without prejudicing my view : but I am unwilling to believe that this controversy was ever dreamed of by the Lloyd, o Rutledge and Grimke of that time. They had seen too often and too recently the gallant yeomanry of the sister States of South Ca . rolina, fighting the glorious battles of Liberty, on her own soil, to think of any conflict of Sovereignty. Cowpens and Eutaw carried too may united associations of American glory, to permit a thought that no duty, no Allegiance, was due to the Government which was itself the cradle of American Revolution. But that I may not be accused of idle dreaming, and of having departed from the noble principles of ’76, read the oaths of the Governor and Privy-council, as fixed by the act of ’78, P. L. 297 ; neither of them speak of fidelity to the State, as a separate nation and Sovereignty. The Governor swears, “I, A. B. do solemnly promise and swear to preside over the People of this State, according to the Constitution or form of government established therein and the laws thereof: that I will cause law and justice in mercy to be executed, and to the utmost of my power, maintain and defend the laws of God, the Protestant religion, and the liberties of America.. So help me God.” The Privy-counsellors’ oath closes with a promise to keep secret every thing the discovery of which may be prejudicial, “ to the liberties of America, or of this State.”
These oaths seem to me to be in effect oaths of Allegiance to the Government, or the People of the United States, considered then as an aggregate community for some purposes. What is a striking fact, is, that the Governor, the acknowledged head of a free and Sovereign State, should have been required to swear to do nothing prejudicial to the liberties of America. The Privy-counsellor swears to disclose nothing which may be prejudicial to ike liberties of America, or this State, recognizing an existing duty on the part of an officer of the State to an aggregate community of which the State was mw, which might not he identical üvjth his duty to the State. *217 To my niind, it is clear as a sunbeam, that the Legislature of ’78 admitted, by these oaths, allegiance or obedience to be due by-the citizen of South Carolina to the United States.
There is nothing to contradict .this view in the acts of 1784, 1788, and 1788, to admit aliens to citizenship, or denizenship, and to preserve the evidence of such admission. Aliens were then obliged to become citizens of a State before they could have any of the rights or privileges of the several States composing the United States. Aliens now become citizens of the United States, before they can acquire the rights and privileges of citizens of a State. Their Allegiance before the Constitution of the United States, was promised to the State, and through- the same oath was extended to the United States— now, the Alien., when he is admitted to be a citizen of the United States, swears to support the Constitution of the United States, and renounces all foreign Allegiance. This is an oath of Allegiance to the United States and the State in which he resides. Ex Parte, Granstein, 1 Hill, 143.
But where is the oath of fidelity and allegiance to the State (as it is spoken of in the acts to which reference is made) to be found? Judge Grimke, who might have-said of all these matters “ Magna pars fui,” omits it altogether in his collection of the laws of the State. For nearly forty years it has been regarded by all as obsolete, or superseded by the oath of office in the Constitution, which is called in many instances the oath of fidelity to the State, and was formerly believed to be so, by all ranks and classes of the community. , -
So far as my knowledge extends, the Constitutional oath of office has been administered to Attornies at Law and Solicitors in Equity, on their admission to plead and practice, instead of the Oath of Allegiance prescribed before the adoption of the Constitution. I have never heard that any other has been administered since 1790 ; and 1 know, that twenty years ago, it was the only oath administered to me when I was admitted to the bar.
I presume no Chancellor has taken any other oath than the oath of office required by the Constitution. For this certainly abrogates all former ones.
The act of 1799, granting the rights and privileges of de-nizenship to Alien Friends, residing, or intending to remove, within the limits of this State, directs that they shall take and subscribe “ the oath or affirmation of allegiance.” What is meant by the oath or affirmation of allegiance ? It could not have meant what one of the Judges of the State thought to be obsolete, 1-epealed, or expired, and which he omitted on that, account, to insert in that collection of Public Laws to which *218 ^le Legislature of ’99, and every other since assembled in the State, have been in the daily habit of referring to ascertain the laws of force in the State. It might have meant, possibly, the oath directed by the then Alien Law of the United States, to j,e administered to Aliens, on becoming citizens. I prefer, however, to give it the construction which it is susceptible of, which is, that- it meant the constitutional Oath of office, which, as ^ ^ave fr°f°re sa^’was regarded as an Oath of fidelity to the state. If there is any other Oath of Allegiance of force in the State, to which it could have reference, I confess that I have yet to learn the fact.
As I have before had occasion to say, an oath to support the Constitution of the United States, with an abjuration of all foreign Allegiance, is the only Oath required by the law of the United States, on admitting an Alien to become a citizen.-— The Legislature of this State, in 1807, expressly recognised as a sufficient guaranty to legalize the title of an Alien to land, the fact of his having conformed to the laws of the United Stales, by giving notice of his intention to become a citizen. This was in substance giving -the rights of a denizen, to one who had made no exclusive acknowledgement of power or right in South Carolina. It shows that to be a citizen of the United States, or even to be on the way to became one, was once such evidence of fidelity, that it dispensed with all other pledges or assurances. The South Carolinian felt then, that to be an American citizen was bis most enviable title and distinction. It was his right to participate in the glorious triumphs of the Revolution of ’76, and to share the Constitutional inheritance of freedom.
This rapid and desultory glance at the Legislation of the State, shows that she did not formerly question the fact, that Allegiance was due and owing by her citizens to the Constitution of the United States.
It is now necessary to look to the Constitution of the United States, to ascertain how far the Government, created by it, is to be regarded as aprimary government entitled to the Allegiance of the people, to the extent of the Constitutional powers conferred on it, and no further.
We have been told in the progress of this argument, that the government of the United States was a mere league between co-States: in other wonds, that the spirit of the old confederation exists in the Federal Constitution, although the former has been superseded and abolished by the latter. We must live in an age of political wonders and m iraeles, if not of natural ones. I confess that I heard with astonishment the old confederation lauded as the best government in the *219 world, after I had regarded il as settled and given up nearly 50 years ago as a matter of history, that it was an impracticable government: — and that the rescue of the People from anarchy, and misrule, and utter ruin under it, by the adoption of the Federal Constitution, was one of the marvels accomplish, ed in the political world by the heroes and sages of ’76. But praise or censure is- as often the result of prejudice as of judgement.
It seems to me to be perfectly clear, that the government created by the Federal Constitution, is strictly speaking and in every sense, a government of the people ; not of the whole people in the United States, as among themselves, but in this point of view, of the people of each State. As between it and foreign States, or nations, it is a government of all the people of the United States, in one aggregate community. It is a government: for within its prescribed constitutional limits, it acts upon the people, and enforces against them its laws, through its own judiciary, or that of each State. Within its own Constitutional limits, it is absolute and supreme.
By the 2d Sec. of the 6th article of the Constitution of the United States, it is declared that “ this Constitution and the laws of the United States which shall be made in pursuance thereof, and all the treaties made, or which shall be made, under the authority of the United States, shall .be the Supreme Law of the Land: and the judges in every State shall be bound thereby, any thing in the Constitution or laws of any State to the contrary notwithstanding.” Does not this supremacy of Constitutional law, necessarily make the government of the United'States as much the government of the people of this State, as her own immediate government? It is too clear, to admit of argument that it does. What is the necessary consequence ? Is a government possessing such great powers, without any tie of obedience or allegiance between it and its citizens? — Can it be, that in a time of war, a citizen soldier would be allowed to refuse to shoulder his musket, and say, I owe you no Allegiance, I will wait until my own State has bade me fight ¡ Could he say, I will assist your enemies, and you dare not punish me for treason, because South Carolina has not defined it? These questions must have an affirmative answer, or we do owe Allegiance to our government, not our agency, under the Federal Constitution.
Allegiance is the tie, it is said, which unites the citizen to. his sovereign. It would seem to be clear that the fact of citizenship of the United States would prove the fact of the sovereignty. If instead of a Constitutional free Republic, we had the misfortune to live under a inonarchy, we should aU *220 ways conclude, that when we were spoken of as the tornib employed, would be understood to mean subjects of the King., and that we should owe him Allegiance. When we speak of citizens, we mean the people of a freo government; and they stand in relation to the government, as incurring in support of the institutions of Freedom all the obligations which the subject owes to his King. It is Allegiance in the dominions of the Autocrat of all the Russias : it is here Constitutional obedience.
If there were no such person as a citizen of the United States known to the Constitution, we might come to the conclusion that the government of the United States is no government, and is not entitled to any allegiance. But the Constitution teems with provisions speaking of citizens of the United States. 2d. par. of the 2nd. sec. ofthe 1st art.; 3d. par. 3d. Sec. 1st. Art. 5th par. 1st see. 2d Art. To whom do they owe allegiance 1 To the State in which they live, or to the government of which they are officers, and of which they swear they are citizens 1 They owe it to both Governments, within their respective Constitutions. Take the President of the United States as an example, and as names are now a days of some importance, let us take Thomas Jefferson, while he was President of the United States. To whom did he owe Allegiance ? Did he owe it to the State of Virginia, of which ho was a Native born citizen ? Did he owe it to the United States, whose officer and head he was for the time being ? The questions seem to involve such opposite claims, that a stranger to our institutions and government could not answer them ; and yet there was involved no inconsistent duty. He was bound to support, protect and defend the Constitution of the United States ; and in doing so, he was supporting, protecting and defending the Constitution of Virginia, in all her rights as a member of the Union.
It was strongly put by one of the Counsel, to whom does the Allegiance of the people residing within the ten miles square, in which the City of Washingtion is situated, belong? It can’t be, that it is to Maryland and Virginia, for neither have even territorial jurisdiction over them. It would seem, from necessity, that their Allegiance was exclusively due to the United States.
But permit me to put another question or two : To whom did the allegiance of the people of Lousiana belong, when the United States bought the soil and territorial jurisdiction from the Emperor of the French ? Not to any State of the Union ; but to their government under the Federal Constitution! To whom does the allegiance of the people of all the States be • *221 yond the Ohio and the Mississippi belong ? 'Their territorial rights are derived from the United States, and most of the land within their limits is granted by the United States to the occupants. If allegiance depends upon the. tenure by which the citizens of those States hold their lands, they owe Allegiance to the United States, if we do not. But such an absurdity cannot exist, that they owe a duty to the Government of the United States, which we do not.
Treason is a violation of the tie of Allegiance. What says the Constitution of the United States in relation to it? It is defined, “ to consist in levying war against the United States, or in adhering to their enemies, giving them aid and comfort. ” If the Government of the United States, (as we familiarly call it, and as I really think it is) is no Government, but is a mere agency, it is strange that treason can be committed against it. Whoever heard of treason being committed against any of the subordinate parts of a Government? It is one-of the essential attributes of Sovereignty to punish for treason. Why is it, that in Treason, two witnesses were required by the English law, to prove an overt act ? One of its greatest sages says, that a single witness proving it, would be oath against oath, the oath of the witness against the allegiance of the subject. Our Constitution has adopted this provision of the English law, and it is fair to conclude that our great sages supposed the allegiance of the citizen to equalize and destroy the oath of a single witness.
The power of amendment of the Constitution by three fourths of the States, has been, by more than one great name in South Carolina, held up as the ultimate sovereignty to which allegiance was due. I think there is no duty, no allegiance, to any such ultimate right. But it shews, however, that a government which can be amended against our will, and which will then operate directly upon us, is something more than an agency ; and that it has high sovereign-powers to which obedience must be yielded. The subject is almost inexhaustible ; and I will only add two or three other views out of the Constitution of the State and the United States. It will be remem-. bered, that before the ratification of the Federal Constitution, we had an oath of fidelity and allegiance to the State. Tho oath of office in our State Constitution was, as I conceive, the substitute for the old Oath of Allegiance t and clearly imports allegiance to the government of the State, within her Constitution, and to the United States’ government, within their Constitution. When the officer swears to preserve, protect and defend the Constitution of this State and of the United States, is. he not sworn to Ire faithful and true allegiance bear to the go *222 vernment of the United States ? It is impossible that it can have any other sense; for any act which was intended to bo tho overthrow of either constitutional government, would be tho violation of the constitutional oath: and the support of the two governments, or more properly and legally speaking,, the two parts of one government, is the duty which ought to bo enjoined by an Oath of Allegiance, framed in any words.
Again: — the Constitution of the United States requires, that “ the Senators and Representatives in Congress, the members of the several State Legislatures, and all Executive and Judicial Officers, both of the United States and of the several States, shall be bound by oath or affirmation” to support it. This is requiring all who are concerned in the administration of the Federal or State Governments, to swear allegiance to the Constitution of the United States, and, of course, to the government created by it, so long as it acts within the pale of the Constitution.
I am satisfied, from general reasoning, the legislation of South Carolina, the Constitution of the United States, and tho oath of office in the State Constitution, that allegiance and obedience are convertible terms, and that we owe allegiance or obedience to both governments, to the extent of the constitutional powers conferred on each. In this respect neither can claim a paramount allegiance : the duty to either is regulated by the respective Constitutions of each.
Having ascertained the constitutional duty and allegiance of the citizen, it is now necessary, before we discuss and decide the question whether the Oath in the Military Bill conflicts with them, to consider the objection, that the act is passed in conformity to an Ordinance of the Convention, and that the Convention was the people, and was illimitable.
In one point of view, a Convention may be illimitable. It is, however, then, a Revolutionary, and not a Constitutional Convention, It is one which assembles to resolve society into its elements, and to which the people necessarily give all power. I do not understand that this Revolutionary character is claimed for the Convention which ordained the Ordinance now under consideration. It is to be regarded as a Convention assembling under and by authority of the Constitution. It may well be doubted whether such a body would have any power to amend the State Constitution : the words of the 2d paragraph of the 11th article would , seem to place it in other hands. Be this, however, as it may, a convention assembling under the Constitution, is only the people for the purposes for which it assembles; and if they exceed those purposes, their act is void, unless it is submitted to the people and affimed by them. *223 It is true, the Legislature cannot limit the Convention; hut if the people elect them for the purpose of doing a specific act or duty pointed out by the act of the Legislature, the act would define their powers. For the people elect in reference to that and nothing else. The Convention was called to consider the acts which were either passed or may be passed by Congress, laying duties on foreign imports, for the protection of Domestic Manufactures ; or for the purpose of enforcing them. The people elected delegates in reference to this call ; it was not contemplated that they should do any act which was not necessary to give effect to the object and purpose of the people. The Convention met in November, 1832, and nullified the laws which they were called on to consider. These laws were repealed, and another act passed which was satisfactory to the Convention, and in March, 1833, they rescinded the Ordinance of Nullification; but again nullified another act of Congress, entitled “ An Act further to provide for the collection of duties on imports,” commonly called the- “ Force Bill.” Here ended their powers. It is clear that the Convention had no right to pass the ordinance defining allegiance, and to authorize the Legislature to pass laws to carry it into effect. It is hence unnecessary to consider what would have been the result of a conflict between an ordinance of the Convention and the Constitution of the United States.
This brings us to the consideration of the oath in the act to provide for the military organization of this State. Before we can see whether it conflicts with our allegiance to the United States, as I understand and have already explained it, we must see what the Legislature means by the words “ that I will be faithful, and true allegiance bear to the State of South Carolina.” If we were left, as in times long gone by, to judge from history and our Constitutions, we should be apt to conclude that this meant nothing more than the constitutional oath, although it might still be unconstitutional.
The Legislature, in 1832, adopted a resolution declaring that “the primary and paramount allegiance of the citizens of this State, native or adopted, is of right due to this-State.” This is one evidence of the sense which the words in the oath are to bear. I trust that I have shewn that our allegiance is duo to the Government of the United States as well as that of the State, according to the respective Constitutions of each — and that of course in this respect there is a direct and positive conflict of duties required by the Constitutions of the United States and the State, and the oath of allegiance as explained and understood by this resolution.
*224 So, again, although the ordinance is no authority to the legislature to pass the act in question, yet it may be referred to as matter of history, to shew in what sense the word was used* Reading the oath in connection with the ordinance, and regarding the R'ter as fixing the meaning of the former, there can be no doubt, according to my view of our constitutional duty as citizens, and of the obligation of our allegiance, binding us to both Governments, that the oath is unconstitutional, null and void.
But it is said, it is an ordinary act of legislation imposing no new duties on the citizen : and that the Legislature might constitutionally prescribe an oath of office for a militia officer.— In this point of view the ordinance of 1833, and the resolution of 1832, arc considered as if no such things existed.
It is first supposed, and that, too, by the venerable and estimable Judge who heard and refused the. motion in the first ease, that a militia officer is not an officer under the Constifution, to whom the constitutional oath of office is required to bo administered. This construction is fortified by the fact that the Legislature of ’94 prescribed an oath to be taken by militia officers in substance agreeing with the constitutional oath in some particulars, but omitting others. 1 Faust, 344.
But however venerable the error may be, and however often it may have been repeated, it must fall before the Constitution of the State, which declares that “All persons who shall be chosen or appointed to any office of profit or trust, before entering on the execution thereof shall take the following oath : “ I do swear (or affirm) that I am duly qualified, according to the Constitution of this State, to exercise the office to which I have been appointed, and will, to the best of my abilities, discharge the duties thereof, and preserve, protect and defend the Constitution of this State and of the United States.’ ”
Is an office in the militia an office of profit or trust ? It would seem that there could be no doubt on the subject. The Constitution of the State, 21st section of the 1st article, shows that the Convention who framed the Constitution, regarded a militia officer as holding an office of profit or trust. It declares that no person shall be eligible to a seat in the Legislature, whilst he holds any office of profit or trust, under this State, the United States, or either of them, or under any other power, except officers in the militia, army or navy of this State, justices of the peace, or justices of the county courts, while they receive no salaries.”
The exception shows that a commission in the militia is embraced by the words an office of profit or trust; and it is con-elusive upon the point under consideration. But this construe- *225 iion eamiot affect the commissions or acts done by officers of the militia, under the militia law, as it stood prior to the act of the last session of the Legislature. For although the constitutional oath ought to have been taken,' yet there was no law declaring that the commissions of the offipers should be forfeited for not taking it. The legal provision in that respect .related to the oath prescribed by the act of 1794. So that the officers were at least de facto, if not. de jure-, and their acts would be sustained.
I doubt, and have ever .since I was first brought to think about the subject, whether the Legislature eah make any addition to the oath of office in the Constitution. It is true, that I was in the House of Representatives when the law to suppress gaming was enacted, and I am therefore constructively to be considered as voting for the oath contained in it: but no vote in fact was taken upon it; and then and for years after I had not thought of the question arising under the constitution. It may be, however, that in the discharge of a mere ministerial civil duty, the Legislature would have the right to secure its performance. The inclination of my mind is, however, to the conclusion, that the affirmative here must be regarded as including the negative, and as denying to the Legislature all power over the subject.
Be this, however, as it may, I am fully satisfied that the Legislature could not so alter the oath of office as to affect the political relations of the citizen to the Government of the Unitod States and the State. These are fixed by the two Constitutions and depend upon their construction.
The power to define and prescribe these relations is no where committed to the Legislature. Indeed, it would be strange if it was, when the Constitution is itself the power to which the Legislature must bend. If they had the power to define and prescribe the political 3-eIations which ought to exist between the citizen and the Stale and the citizen and the United States, they could remodel the government at pleasure. The Legislature would be thus above all laws, all Constitutions.
The question of allegiance depends upon our political relations to the Government of the United States and the State. An oath requiring the officer to promise to be faithful, and true allegiance bear to the State of South Carolina, is establishing the political relation which he is afterwards to bear to the State and the United States; it either requires something more than to “ preserve, protect and defend the-Constitution of this Stale and of the United States,” or it is the same thing, and in either point of view it is void. For the people, and not the Legislature, have the right to prescribe the duty of the officer *226 in that respect. They did prescribe it in the Constitution, and the act of the Legislature is unconstitutional and void.
I am, therefore, of opinion that the motion should be granted in the case of the State ex relatione E. J. M’Cready v. Col. B. F. Hunt, and dismissed in the case of the State ex relatione James M’Daniel v. Brigadier General Thomas M’Meekin.
JOHN B. O’NEALL.
Johnson, J.
It is provided by an Act, passed at the last session of the Legislature, that “ in addition to the oaths now required by law, every officer of the militia hereafter elected, shall, before he enters on the duties of his office, take and subscribe before some person authorized by law to administer oaths, the following oath: “I, A. B. do solemnly swear (or affirm, as the case may be) that I will be faithful, and true allegiance bear to the State of South Carolina.”
The relator, Edward M’Cready, having been elected to the office of Lieutenant of Militia, subsequently to the passing of the act, declined taking and subscring the oath above recited ; but notwithstanding, claimed to be entitled to be commissioned, on the ground that the said oath was enacted in violation of the State Constitution. The defendant, the Colonel commanding the regiment to which he belonged, declined taking upon himself the responsibility of determining that question, and refused to grant him a commission; and a motion was made, before Mr. Justice Bay, for a rule to show cause why a mandamus should not issue, to compel him to do so ; and that motion having been dismissed, it is now renewed here, in the form of an appeal from that judgment.
The counsel opposed to the motion, without conceding that the said oath is incompatible with the Constitution, have insisted also, that the authority of the Legislature is derivable expressly and directly from the ordinance of the Convention of delegates of the people, passed on the 18th Mareh, 1833, wherein it is ordained and declared “ That the allegiance of the citizens of this State, while they contiuue such, is due to the said State; and that obedience only, and not allegiance, is due by them to any other power or authority to whom a control over them has been or may be delegated by the State.” And the Legislature is thereby “ empowered, from time to time, when they may deem it proper, to provide for the administration to the citizens and officers of the State, or such of the said officers as they may think fit, of suitable oaths and affirmations, binding them to the observance of such allegiance, and abjuring all other allegiance.”
On the other hand, it has been maintained? that the power *227 of the Convention was and rightfully might be limited to the duty of taking into consideration “ the several acts ot the Congress of the United States, imposing duties on foreign imports for the protection of domestic manufactures, and for other unauthorized objects; to determine on the character thereof, and to devise the means of redress,” &c. and these objects having been attained, the Convention had no authority to empower the Legislature to prescribe an oath of. allegiance in this or any other form — and conceding, for the salt-s; of argument, that the authority of the Legislature is derivable from the ordinance of the Convention, it is further insisted, that if the term allegiance, used in the act, is to be understood as defined in the ordinance, to be exclusively due to the State, the said oath, is void — as being repugnant to the Constitution of the United States — allegiance being also due to the United States.
Out of this state of the case, the following general propositions arise:
1st. Whether the said oath is or is not consistent, with the Constitution of the State ?
2dly. If it is not, whether the Convention had authority to empower th.e Legislature to enact an oath on the subject of allegiance ?
3dly. Whether it is-not repugnant to the Constitution of the United States?
In the language of the' declaration of rights, contained in our State Constitution, “ all power is originally vested in the people, and all free governments are founded on their authority, and are instituted for their peace, safety and happiness,” and the Constitution is an emanation from this high authority. Its design was to establish rules for the government of the State, and to that end it has provided for the organization of a Legislative, Executive and Judicial departments; and assigned to each their appropriate duties, with such limitations and restrictions on their powers, as were deemed necessary to the general, good. To the Judiciary has been confided, (and whether wisely or not, it is unnecessary now to enquire) the exposition of the laws ; and indirectly, in cases involving the right of individuals,, the supervision of the other departments.. The Judges themselves being responsible to the immediate representatives of the people.
Under any circumstances, the exercise of this power- is one of great delicacy ; and no combination of circumstances could better illustrate its great importance, and the vast amount of responsibility incident to. its discharge, than those which enter into this case. The delegates of the people convened for the purpose of providing a remedy for evils arising out of certain *228 acts of Congress, which are supposed to be unconstitutional and oppressive, have, upon full deliberation, solemnly declared “ that the allegiance of the citizens of this State, while they continue such, is due to the State, and that obedience only, and not allegiance, is due by them to any other power.” The Le» gislature, which convened after the promulgation of this decía-ration, have, by a resolution, solemnly affirmed the correctness of the principle contained in that declaration, and by an act, provided that every officer of militia hereafter to be elected, should take an oath of allegiance to the State. On the other hand, a large and very respectable minority of the people have, in public meetings and through the public journals, denounced the principle of the declaration of the Convention and the act of the Legislature, as subversive of the rights of conscience, and contrary to both the State and Federal Constitutions ; ancl in the angry discussion which has grown out of this controversy, and which is still continued with increasing animosity, all the bad passions of the human heart have been excited to the highest pitch, and want nothing but an exciting cause to call them into action.
It is a question about which the parties have eeased to reason, and have settled down upon opposite conclusions, as aphorisms admitting of no discussion, and it is impossible to approach it without a full sense of the great responsibility which it imposes.' But it is a duly imposed on the Court by the Constitution — and if there be any duty more sacred than all others, it is that which devolves on the Court to preserve that Constitution from violation — except as the people may in their wisdom think proper to change, amend or alter it. It is the sentinel which the Constitution has placed as a guard upon the other departments of the government, as the best security for the rights and liberties of the people — and I approach the questions now submitted, with a consciousness that I shall have discharged that duty, whatever may be the consequences.
The authority of the Court to declare an act of the Legislature unconstitutional, has never been questioned. It results necessarily from that general power which the Court possesses to expound the law. The Constitution is the paramount law, and all acts of the Legislature or of other departments of the government, repugnant to, or inconsistent with it, are necessarily inoperative and void. The Court will never, however, presume to declare an act of the Legislature void, upon light and trivial grounds. Respect for the most necessary and powerful department of the government would forbid it; on principle, too, an act of the Legislature ought to be suffered to prevail and operate as law, unless it is demonstrably inconsistent *229 with the Constitution. Without a Constitution, the power of the Legislature would be under no restraint, except those great fundamental principles by which our natural rights are secured, and which man himself can’t abrogate; the Constitution was intended to restrain those powers within prescribed rules; and upon the principle that all delegated power is to be strictly pursued, an instrument intended to restrict general powers, ought to receive the same rigid construction. The general power being conceded, it ought to be rendered certain that it has been taken away or abridged.' I can’t, however, give a willing assent to the rule laid down by Judge Waties, (if rule it ean be called) that an act of the Legislature ought to prevail, unless it is so palpably repugnant to the Constitution, that its inconsistency would be obvious to any well informed mind. — Well informed minds might well enough draw opposite conclusions, as to questions which had not been subjected to the analysis of reasoning, and yet meet in the same view, when it had been subjected to that analysis. Truth does not always float on the surface, and is not the less convincing that it has been brought to light at the expense of much toil. Many of the aphorisms which it would be criminal now to doubt, would have been regarded as heresy in times past. But whatever may be the process by which we arrive at it, I am satisfied upon the principle laid down, that an act of the Legislature passed according to the forms of the Constitution, ought to prevail as a rule of action, unless it is fairly demonstrable to be repugnant to the Constitution ; and with this rule as a guide, I will proceed to consider the first of the foregoing propositions :
Whether the oath prescribed by the Legislature to be taken by all militia officers hereafter to be elected, is or is not consistent with the Constitution of the State.
That provision of the Constitution which this act is supposed to violate, is found in the 5th Article, wherein it is ordained that “All persons who shall be chosen or appointed to any office of profit or trust, before entering on the execution thereof, shall take the following oath: “ I do swear (or affirm) that I am duly qualified, according to the Constitution of this State, to exercise the office to which I have been appointed, and will, to the best of my abilities, discharge the duties thereof, and preserve, protect and defend the Constitution of this State and of the United States.’ ”
It has not, and I presume will not, be seriously questioned that a militia office is an office of profit or trust, within the meaning of this article of the Constitution. I can’t conceive of an higher trust than the command of an army in the time-of war. It is also an office of profit. The officer may be *230 called into actual service, and in that event provision is made by law for bis pay and rations — (1 Faust, 312) — and I shall consider this question as admitting of no doubt.
But it is denied that this Article of the Constitution contains any prohibition which restrains the Legislature from exacting from an officer elected or appointed, any other oath that might be thought expedient, and which was not in itself directly inconsistent with that prescribed; and it is insisted, that the oath of allegiance prescribed by the act under consideration, is not inconsistent.
There is not, it is true, any thing in the Constitution which directly prohibts the Legislature from exacting another oath, in any other form, than that prescribed, to be taken by all officers, in the 4th Article — but Lord Coke says, (1 Inst. 381) that the most natural and genuine way of construing a statute, is to construe one part by another, of the same statute; for this best expresseth the meaning of the makers, and such construction is ex viscerebus actus. This rule is alike applicable to all writings, constitutions and compacts — and it is well remarked, by Judge Nott, in Cohen v. Hoff, (2 Tread. Rep. 671) that sometimes affirmative words necessarily imply a negative of what is not affirmed, as strongly as. if expressed. That remark was applied to the question, whether an act of the Legislature, authorizing the Governor, in case of the sickness of the Judge on circuit, so as to be unable to hold the Courts, to appoint a person to perform his duty, was or was not constitutional — and to see its full force, it will be necessary to remark, that the 6th Art. of the Constitution declares that the Judges of the Superior Courts shall be elected by both branches of the Legislature — and although negative terms are not introduced to restrain the appointment of Judges, in a different- manner, that learned and able Judge came to the conclusion that the Constitution must be so understood. If one having authority, prescribe the mode in which a particular act is to be done, can the agent who executes it substitute any other ? Does not the act of prescribing the mode, necessarily imply a prohibition to all other modes?
But let us test this construction according to Lord Coke’s rule, by construing this part of the Constitution with the o-thors.
Without a Constitution, the Legislature, like the British Parliament, would have been supreme, and without any other rule for its government than its will. The only purpose of a constitution was, therefore, to limit this power by prescribed rules; and on looking through the Constitution, it will be found that there is no grant of the law-making power, for that was unne. *231 eessary. Every provision in the Constitution affecting the power of the Legislature, must, therefore, necessarily be understood as limitting that power, unless it is otherwise express, ed — and I take, it, that in every instance in which the Constitution has prescribed a rule in affirmative terms, without other qualification, the negative arises by necessary implication; unless the terms in which the oath of office prescribed in the 4th Art., and before recited, constitutes an exception.
For example — the 6th section of the 1st Art. provides, that “no person shall be eligible to a seat in the House of Representatives unless he is a free white man, of the age of twenty-one years, and hath been a citizen and resident of this State three years previous to his election ” — nor unless he possess certain property qualifications. The 8th section contains the' same provision, expressed in the same terms, with respect to the qualifications of Senators, varying only as to the age, residence and property qualifications — and so .of the age, residence and property qualifications of the Governor and Lieutenant Governor, provided fo.r in the 2d Art. The Governor shall be commander of the Army and navy of the State. He shall have power to grant reprieves and pardons. He shall take care that the laws are faithfully executed in mercy, &c.
In all these instances, and many more that might be referred to, the rules are expressed in affirmative terms — nor is there any thing in the terms themselves which directly imply a negative to the power of the Legislature, in prescribing a greater age, a longer residence, or higher property qualification of the members of the House of Representatives and Senate, and of the Governor and Lieutenant Governor — or that that thoy shall not supersede the Governor in the command of the army and navy, or vest the pardoning power some where else. But when it is Recollected that the question before the Convention, was, what ought to be the qualifications and age of the members of the Senate and House of Representatives and of the Governor and Lieutenant Governor, who ought to command the army and navy, and who exercise the pardoning power, the conviction is irresistible, that the determination of the Convention is definitive, and must operate as a negative on the powers of the Legislature. The intention is quite as manifest as if it had been expressed in the plainest and most familiar terms. The practice of the government is in conformity with this view; no one ever yet thought that .the Legislature could rightfully demand higher or other qualifications for members of the Legislature, or Governor, or Lieutenant Governor; or deprive the Governor of the powers vested in him by the Constitution — and our whole history furnishes no instance of an attempt to do so.
*232 Let us apply this reasoning to tho article under considera* tion.
“ All persons who shall bo chosen or appointed to any office of profit or trust, before entering on the duties thereof shall take the following oath,” &c. Here, as in the instances before put, there are no words restraining, in direct terms, the power of the Legislature in prescribing any other form of oath; but to ascertain its true meaning we must subject this article to the same analysis that we did the preceding.
The Convention was in the act of framing a Government for the State, upon such principles, and under such limitations and restrictions, as in their judgment was most conducive to their peace, happiness and safety — for the most obvious reasons its administration ought not, in any instance, to be confided to any person who was not attached to its principles, and willing to give it his entire support. Let it be supposed, that the question was put to the Convention, what pledge ought to bo required of those who are to be chosen or appointed to admin, ister it — and let it be kept in mind, that the answer is given by the delegates of the people, who, as a community, are deman. ding it, and the answer given in the language of the Constitution : “ I do swear, or affirm, that I am duly qualified, accord, ing to the Constitution, to exercise the office to which I have been appointed, and will, to the best of my abilities, discharge the duties thereof, and will preservo, protect and defend the Constitution of this State and of the United States.” Those of us who may be selected to fill the offices of the Govern, ment, are willing to give this pledge of fidelity to the Government ; and this pledge we, the people, speaking through their delegates, especially appointed for the purpose, are willing to accept — and does not a negative, on the power of the Legisla, ture over this subject, as necessarily arise as in the cases before put? As well might the Legislature undertake to add to the qualifications of a member of the Legislature, that he should be of a particular stature, or double the age required by the Constitution, as to demand of a citizen other pledges of devotion and fidelity to the Government, than to those prescribed by the Constitution.
I am met, however, with the objection, that the oath of Allegiance and fidelity imports something else than is expressed in the oath prescribed by the Convention — and conceding that the Legislature have no authority to superadd any thing to the same subject matter, or to vary the terms of that oath, it is contended, that the subject of allegiance not being embraced in it, the Iegislaturé, in virture of their general powers, have authority to prescribe an oath of allegiance and fidelity,
*233 It is not my purpose, here, to enter into an inquiry as to the nature of allegiance and fidelity ; that more properly belongs to another branch of this case : but I will passingly remark that the government may, under the authority of the Constitution, demand of the citizen the surrender of the last • dollar which he possesses, and to peril his life in its defence, if the public good requires ; and if fidelity and allegiance has still higher claims upon him, I can’t perceive in what way they are to be satisfied: — But let it be conceded, that fidelity and allegiance import something more than is expressed in the obligation to support and defend the Constitution — it is still but a pledge of fidelity to the government — and so is. the oath prescribed by the constitution — the form in which it should be put, and the extent to which it should be demanded, would necessarily have entered 'into the consideration of the convention in framing the Constitution — and there is nothing unreasonable in supposing, that the question whether it should be put in the form adopted by the constitution or in the form of an oath of fidelity and allegiance as prescribed by the act, was distinctly before the convention — if it had, I can suppose very satisfac - tory reasons why the former would have been — and in my judgement ought still tobe preferred — Allegiance, in its technical feudal sense, was intended to express the obligations of the vassal to his Lord, and of the Subject to his Prince, founded upon the right to govern, and the duty to obey. The men who framed that Constitution were tile representatives of a people, who, by an eventful struggle, and at the expense of much blood and treasure, had thrown off their vassalage to the British crown, and assumed the right of self-government — they met in convention, feeling for themselves and their constituents that proud independence which their situation was so well calculated to inspire — they felt that all were upon a footing of equality: the humblest individual would have disdained to bend the servile knee to any being on earth, and it is not surprising that whilst all individuals were willing to give the most solemnly pledges to support the government of their choice, the greatest repugnance should have been felt to associating with it an obligation applicable to the degrading relations of vassal and Lord, Subject and Prince. It is true that the term-allegiance is not unfrequently used to express the relations existing between the citizen and the government, and when so understood is void of offence ; but at the time the Constitution was framed it is no matter of surprise if it should have been rejected on account of the degrading associations connected with it; nor would it excite wonder if even at this dav the mode of expression adopted in the Constitution; by *234 which all the objects are attained, should be preferred, if the public mind could be brought to deliberate on the subject dispassionately.
The 3rd sec. of the 6th art. of the constitution of the United States provides that members of Congress “ and members of the several State Legislatures, and all executive and judicial officers both of the United States and of the several states, shall be bound by oath or affirmation to support this constitution and an example that this provision in the constitution is not regarded as prohibiting Congress from superadding other obligations, is drawn from the act of Congress of March 1802 : Ingersol’s Dig. 38, by which the officers and soldiers of the army are required to take and subscribe an oath that he “ will bear true faith and allegiance to the United States of America,” &c, But the cases are not analagous — the constitution of the United States does not profess to prescribe the form of the oath as in the State constitution, but merely to state the principle on which it is to be framed, leaving it to the states, so far as it is applicable to them, to prescribe the form, and to Congress to do the same so far as it is applicable to the subjects under their control — 'the principle laid down in the constitution imposes an obligation to support the constitution, and the form in which it is applied in our state constitutions is that the officer shall swear that he will “ support, protect and defend the constitution” — and in the act that he will “ bear true faith and allegiance to the United States of America and if the example proves any thing, it establishes most clearly what I have before endeavored to maintain, that the obligation to support the constitution, is identically and substantially the same as to be faithful and bear true allegiance to the State; and that this was the sense in which it was understood by Congress, is demonstrable from the circumstance that in the oath before referred to, there is no other substitute for the obligation to support the constitution. This argument is in my judgment conclusive as to the inapplicability of the example, but I \yill here remark, as applicable not only to this but all other examples of Legislation, that however they may serve to illustrate a doubtful interpretation of the constitution, they will never be permitted to control its obvious meaning. We know that legislation is not always conducted with the strictest regard to the constitution. The stimulus of immediate interest is necessary to keep the attention always alive to the nice distinctions which are necessary to the perfect understanding of the constitution and the laws enacted — nor can a more satisfactory conclusion be always drawn from even long acquiescence in an enactment of the. Legislature. There may be *235 cases so unimportant to the individuals affected by them, and so immaterial in themselves, as not to have excited attention through a long course of years. The form of the oath prescribed by the act of Congress referred to, may serve as an example. The officers and soldiers of the army are, from the nature of their offices, bound to support the constitution, and to them it was matter of no importance in what form that obligation was put; and it would be but a poor compliment to the excellencies of that constitution which we now, and I trust ever will cherish, as the palladium of our liberties, to suffer its foundations to be undermined by such means.
Thev act of the Legislature of this State of Dec. 1794, 1 Faust, 454, is an example of the application of the principles of the oath prescribed by the constitution of the state expressed in terms different from those used in the constitution — that act provides that every officer of militia shall take the following oath before some magistrate who shall certify the same on the back of his commission, "I, A. B. do solemnly swear (or affirm as the case may be) that I will support and maintain to the utmost of my ability, the laws and constitution of this State and of the United States.” In this act the word maintain is substituted for protect and defend, and expresses precisely the same idea, and I have no doubt was intended to have been expressed in the same terms, and it is precisely one of those loose acts of legislation about a matter which no one was interested to investigate. As the substance was preserved, no one was interested to inquire whether the form had been preserved or not.
Generally speaking, mere matters of form ought not to be regarded if the substance is preserved, but it must be recollected that the subject to which this rule is to be here applied, is an oath intended to bind the consciences of men, and is prescribed by the supreme power in the state, the people themselves, and no one else has the authority to alter or change it — < form therefore becomes matter of substance — we are not then permitted to substitute other terms than those prescribed, for, peradventure, they import something else — the obligation to be faithful and true allegiance bear to the State, imports, according to my understanding of it, precisely the same as an obligation to preserve, protect and defend the constitution; but the very foundation of. the authority to impose that obligation, is that it imports something else. I have no doubt about the authority of the Convention who framed the constitution, to have required an oath of fidelity to the government by which they are protected, both from officers and citizens, and that they had the right to put it in the form they did, or in the form of an *236 oath of fidelity and allegiance as prescribed in tlio act ; bui-when an oath is prescribed differing in terras from that required by the constitution, and about the import of which there is so much diversity of opinion, there is at least some danger that the conscience may be in peril of moral.perjury. If the import be different, the citizen or officer may be required under the constitution to discharge duties inconsistent with the obligations which the oath imposes, and that constitutes an insuperable objection to- the su-peraddition of any other obligation than that imposed by the constitution.
The oath required of sheriffs, justices of the peace and quorum, by the act of 1816, in addition to the usual oath of office, to enforce and carry into effect the act against gambling, has been relied on as an instance in which the Legislature has superadded other obligations in the form of an oath, than those imposed by the Constitution, and as another instance of the Legislative interpretation of the Constitution.
I have before remarked that the leading object of the oath prescribed by the Constitution, was to exact a pledge of fidelity from those concerned in the administration of the' government. But the oath imposed by this act refers to a different class of duties. The act was intended to suppress the practice of gaming, and it was made the duty of these officers to carry it into effect; and there is nothing in the nature of the oath, which, by any possible construction, can render the obligation which it imposes, inconsistent with the oath prescribed by the Constitution. The Legislature had assigned to these officers a particular duty, and they had the right to require any security that might bo deemed necessary for its faithful performance, not inconsistent with the Constitution ; and it is upon this principle that bonds for the faithful discharge of (he duties of office are required of most or all ministerial officers.
The Constitution, in the article before recited, does, it is true, require that all officers shall take an oath faithfully to discharge the duties thereof, and as a general provision, covering all duties, there is perhaps room to doubt whether the Legislature have the power to require any other — but I am satisfied that the exercise, of the power is in strict conformity with the Constitution. As before remarked, so much of the oath prescribed in the Constitution as relates to the duties of office, is expressed in general terms, and intended to cover all duties, and cannot be construed to exclude appropriate obligations to discharge a particular duty which the Legislature might assign, and is precisely the case supposed in a dictum of chief justice Marshall, in McCollough v. Maryland, 4th Wheat. 416, which is relied on by the counsel opposed to the motion: when he *237 says, “that ho would be charged with insanity who should contend that the Legislature might not supperadd to the oath directed by the Constitution such other oath of office as its wisdom might suggest.” The chief justice was maintaining the proposition that when the Constitution has designated a particular end, without having prescribed the means of attaining it, Congress were at liberty to select such as they should deem the most appropriate ; and he illustrates it by the oath of fidelity required by the Constitution, and concludes with the expression above recited, and surely that cannot be taken as authority in a case like this, when the end, the fidelity of the officer to the government, and the means, the oath prescribed by the Constitution, are distinctly and specifically designated. The counsel opposed to the motion have referred to a long list of the acts of the Legislature following the Constitution of 1778, for the purpose of shewing that an oath of office, prescribed by the Constitution, does not conclude the Legislature from imposing other oaths of office, and these I propose to notice particularly, to show that so far from sustaining that position, they lead irresistably to the conclusion that the ground occupied by that Constitution was held sacred and inviolable, and that all the oaths 'referred to relate to the particular duties of the office, and are within the rule before laid down — I will begin by refering to that Constitution. It provides “ that all persons who shall be chosen and appointed to any office, or to any place of- trust, civil or militaiy, before entering upon the execution of office, shall take the following oath: “Ido acknowledge the State of South Carolina "to be a free, independent and sovereign State ,• and that the people thereof owe no allegiance or obedience to George the III, King of Great Britain, and 1 do renounce, refuse and abjure all allegiance or obedience to him. And I do swear (or affirm as the case may be) that I will, to the utmost of my power, support, maintain and defend the said State against the said King George the Third, and his heirs and successors and his or their abettors, assistants or adherents, and will serve the State in the office of-with fidelity and honor and according to the best of my skill and understanding — so help me God.”
This Constitution was adopted on the 19th March, 1778, and on the 28th of the same month, only nine days after, an example of legislation under it is found in the oaths prescribed to the Governor and members of the privy council. That prescribed to the Governor is in the following form, viz: «I, A. B. do solemnly promise and swear to preside over the people of this State, according to the Constitution or form of Government established therein and the laws thereof; that I will causo *238 law and justice in mercy to be executed, and to the utmost of my power, maintain and defend the laws of God and the protestant religion and the liberties of America.” That prescribed to the members of the privy council is that he will “ well and faithfully execute the duty of member of the privy council, according to the Constitution or form of Government established therein and that he will keep secret all matters and things which shall come to his knowledge, the discovery of which may be prejudicial to the liberties of America, or of the State, &e. (P. L. 297.) In the October of the same year, the form of the oath of office of justice of the peace is prescribed by act, by which he is required to swear that he “will truly demean himself in the office of justice of the peace, and will conduct himself impartially, according to the best of his skill and knowledge, and the laws, usages and customs of the State,” &c. (P. L. 301.) and so of the oath of office of Commissioners of Locations, that he “ will well and faithfully execute the office of Commissioner of Locations,” (fee. “ without giving a preference to any through favor, fear or. reward.”— (P. L. 335.) and the following is the form of the oath appointed to be taken by the Chancellors by the act of 1784. — • (P. L. 337.) “I, A. B. do swear that I will well and truly serve the people of this State in the office of the Judge of the Court of Chancery, and that I will do equal right to all manner of people, great and small, high and low, rich and poor, according to equity and good conscience and the laws and usages of South Carolina, without respect of persons, according to the best of my knowledge, skill and ability — so help me God.”
Now, in all these instances, it will be perceived that the oaths prescribed refer exclusively to the particular duties which the officer might be called on to discharge, and were evidently intended to secure their faithful execution — and further examples of the same sort may be found in the oaths prescribed to the judges, clerks and sheriffs of the county courts by the act of 1785. (P. L. 367.) In that prescribed by the act of 1785, to Justices of the Court of Caveats, (P. L. 384) and in that prescribed by the act of 1787, to be taken by Escheaters — (P. L. 429,) and I have no doubt a further examination of the acts of- the Legislature would bring to light many other examples of the same character — and what does all this prove ? Why, most incontestably, that that Constitution was considered as having prescribed an oath on the subject of fidelity or allegiance to the State, in such terms as were thought best calculated to secure that object, and that the Legislature did not think themselves authorized to interpolate any thing into it; for in all the examples before enumerated, there is no in *239 stance of the most distant allusion to the subject, but on the contrary the oaths of office prescribed in these acts are confined to the appropriate duties of the office.
The Constitution of 1778, like the Constitution of 1790j contains a general oath of office,, faithfully to discharge the duties thereof — and the practice of the Legislature, under both Constitutions, furnishes a most conclusive argument in support of the position which I have before advanced, that this general provision was not understood to conclude the Legislature from exacting the pledge of an oath from the officer to discharge the particular duties assigned him; as in the instance of the act of 1816, on the subject of gaming.
I will notice only one other instance of legislation under the Constitution of 1778, and which has been put in requisition in the argument. It is that of the act of 1785 — (P. L. 368) that an attorney, at the time of his admission to practice, shall “take the oath of'allegiance and fidelity to the State.” What oath? Why, necessarily the oath prescribed by that Constitution; by the use of the definite article iht, some known oath is necessarily referred to, and we know of no other than that prescribed in the Constitution. There is another reason which is equally satisfactory on this subject — the office of an attorney is not an office of profit or trust within the meaning of the Constitution, no more so than the profession of medicine or divinity — and the Legislature were at liberty to prescribe any form of oath that they might think expedient and proper.
Examples from the legislation of other States, in relation to this subject, have been relied on to show that oaths of allegiance are the subject of legislative regulations, but on referring to them it will be found that in all the States where this license is allowed, it is predicated on constitutional provisions, or where the Constitution contains no provision on the subject. The Constitution of Massachusetts may be put as an example of the first description. In the general oath of office, in the 1st article of the 6th chapter, an oath of allegiance is incorporated in the following terms: “And I do swear I will bear true faith and allegiance to the said Commonwealth”— and the sainé form is substantially pursued in an amendment to that Constitution — and the requisition of an oath of allegiance in that form is not only consistent with the Constitution, but expressly enjoined by it.
The Constitution of Georgia contains no general provision on the subject of Allegiance, but the 19th section of the 3d Article requires that the members of the Legislature shall take an oath that he has not obtained his election “by bribing, treats', canvassing,” &c. — “ that he considers himself constitutionally *240 qualified,” dzc. and that he “ will bear true faith aud allegiance to the State,” &c. and the 5th section of the 2nd Article prescribes the form of the oath of office to be taken by the Governor. But no form of an oath of office for any other officer, nor any principle directory of the manner in which they should be framed, has struck my eye on looking over that Constitution, and consequently the Legislature were at liberty to adopt that form which in their judgment was best calculated to secure fidelity to the government of the State, and the faithful discharge of the duties of the officer. We may perhaps find in Georgia other examples worthy of imitation. By an act of the Legislature of that State, members of the Legislature are required to take an oath that they have not been concerned in a duel, and I have recently understood from a gentleman highly distinguished in that State for his legal attainments, that instances have occurred in which members returned have refused to take that oath, and that by common consent it is conceded that the Constitution having prescribed the form of the oath, the act was void.
I have thus demonstrated satisfactorily, at least to my own mind, that the oath prescribed by the Constitution to be taken by all persons chosen or appointed to any office of profit or trust, that they would “ support, protect and defend the Constitution of this State,” is all the pledge that the people of this State were willing to give, or disposed to accept, of fidelity and allegiance to the State — and that the people themselves having in the Constitution proscribed the form, the Legislature had no authority to add to, vary, or alter it, although the terms used might import the same thing; and consequently that so much of the act of the Legislature of.the last session as prescribes the form of an oath of Allegiance and fidelity to the State, is repugnant to the Constitution.
This brings me to the next general proposition, whether the Convention (of March, 1833) had authority to empower the Legislature to enact an oath on the subject of allegiance.
That Convention was holden under the authority of an act of the Legislature, (passed on the 25th October, 1832) wherein it is recited that “ Whereas, the Congress of the United States hath, on divers occasions, enacted laws laying duties and imposts for the purpose of encouraging and protecting domestic or American manufactures, and for other unwarrantable purposes, which laws, in the opinion of the good people of this State, and the Legislature thereof, are unauthorized by the constitution of the United States, and are an infringement of the fights reserved to the States respectively, and operate to the grievous injury aud oppression of the citizens of South Caro *241 lina: And whereas, to the Slate, assembled in Convention, it belongs to determine the character of such acts, as well as the nature and extent of the evil, and the mode and- measure of redress.” “ Be it, therefore, enacted,” &c. “ that a Convention of the people of this State shall be assembled at Columbia on the third Monday in November next,ihen and there to take into consideration the several acts of the Congress of the United States imposing duties on foreign imports for the protection of domestic manufactures, and for other unauthorized objects; to determine on the character thereof, and to devise the means of redress ; and further, in like manner, to take into consideration such acts of the said Congress, laying duties on imports, as may be passed in amendment of, or substitution for, the act or acts aforesaid; and also all other laws and acts of the Government of the United States, whiph shall be passed or done for the purpose of more effectually executing and enforcing the same.” The act then goes on to provide for the election of delegates and their qualifications, and to prescribe the time and place of holding the election.
In pursuance of this act, the people proceeded to the election of delegates, who assembled at the time and place appoint, ed, and by an ordinance ratified on the 24th of November of the same year, proceeded to declare and ordain, “that certain acts of the Congress of the United States, purporting to be laws for the imposing of duties and imposts on the importation of foreign commodities,” «fee. “ are unauthorized by the C on-stitution of the United States, and violate the true meaning and intent thereof, and are null, void and no law, nor binding upon this State, its officers or citizens;” and they thereupon proceeded to provide ways and means to prevent the operation and enforcement of the said acts of Congress within the State.
Not long after this, the Congress of the United States passed an act remodelling the duties and imposts on foreign impor. iations, and thereupon the Convention was again convened, and by an Ordinance ratified on the 15th of March, 1833, in which it is recited that Congress had recently passed an act which had provided for such a reduction and modification of the duties on foreign imports as would ultimately reduce them to the revenue standard — it is ordained and declared that the ordinance above recited, and all acts of the Legislature passed in pursuance thereof, should from thenceforth be deemed and held to have no force or effect. The Convention proceeded, notwithstanding the ordinance before recited, three days after, to declare “that the allegiance of the citizens of this ''State, while they continue such, is due to the said State; and that obedience only, and not allegiance, is due by them to any oth- *242 oe power or authority,” dzc. and they thereupon authorize and empower the Legislature to provide for the administration of suitable oaths binding the citizens and officers of the State to the observance of such allegiance, and abjuring all other allegi-anee; and this authority is claimed as abrogating the Constitution, and as conferring on the Legislature the power to enact the oath contained in the act under consideration.
I have thus presented, in a connected view, the whole ground of this question, and it is apparent that the evil which is supposed to render the calling of the Convention necessary, was the unconstitutionality of the acts of Congress imposing duties on the importation of foreign commodities, for the protection of domestic manufactures, and the object to submit that matter to the consideration of delegates appointed by the people for that especial purpose, and that they might adopt such measures as the exigencies of the case might in their judgment demand. In the appointment of delegates to that Convention, the people acted upon the faith that they were to be charged with those duties and no others, and the assumption of any other powers than those necessary to the attainment of the objects in view, would have been a violation of the trust reposed in them, and an usurpation of the rights of the people.
The idea is, that the Convention possessed all the powers of the people, and might rightfully exercise it in relation to all subjects, and in any manner they might think fit.
Can it be supposed, that the good people of this State thought that in the appointment of delegates to that convention, they were conferring on them the authority to transfer their allegiance to the grand Turk, or the Emperor of Russia, or to indulge in any other caprice they might think proper? No such thing. — They had been invited by the legislature to elect delegates to a convention charged with certain specific powers in relation to certain acts of Congress which were supposed to be unconstitutional and injurious to the interest of the citizens of the State — they accepted the invitation and elected their delegates, and upon the common-place principle that the authority of the agent is limited by the powers conferred on him by the principal, the powers of the delegates were limited to the objects designated by the act under which the convention was called.
Now the preamble to the ordinance of the 15th of March, before recited, shows that all the objects of calling the Convention had been attained, the offensive acts of Congress had been repealed, or so modified as to be acceptable to the convention ; and on the faith of it the former ordinance of the Convention, and the acts of the legislature passed in pursuance *243 of it, and intended to provide a remedy against the evil, were annulled and repealed.
The declaration of the Convention, in the Ordinance of the 18th March, that the allegiance of the citizen was exclusively due to the State, and the authority given to the legislature to provide by law for the administration of oaths to carry it into effect, cannot by any possible means be brought within the objects contemplated in calling the Convention, for they had already been accomplished. In the bill, introduced into the legislature as its last session, to amend the constitution, so as to authorise the administration of an oath of allegiance, m conformity with that prescribed by the act, the legislature have very clearly expressed their own judgment of this matter— that bill was wholly unnecessary, if they could derive their authority from the ordinance ; and the terms of that authority, if that be good, are as broad as any advocate for allegiance could desire.
Several subdivisions of this general proposition have been pressed upon the consideration of the Court — and amongst these, is the question, whether the term allegiance used in the act, is to he understood to mean exclusive allegiance to the State, as defined in the Ordinance of the Convention, and in the resolution of the same legislature which passed the act.
The general rule certainly is, that, where the meaning of words, used in a statate, have been ascertained, they are to be understood in the same sense when they are used in a subsequent statute. — [Bacon, Abe. Statute, 1.] But, I apprehend, that when a word occurs in a Statute, which is susceptible of two interpretations, one in which it may legitimately operate, and the other would wholly defeat its operation, it ought, on ihe maxim ut res magis vdleat quam pereat, to receive that interpretation favorable to its operation. If, therefore, in the construction of the word allegiance, in the act, as exclusive allegiance to the State would render it unconstitutional as repugnant to the constitution of the United States, it ought to be construed as an allegiance consistently with the constitution, if that would give it effect and operation.
Neither the declaration of the convention, nor the resolution of the Legislature, have any necessaiy connection with the act — nor have either of them the force of law — they are, it is true, the expression of an opinion entitled to great consideration — but it does not follow that even those who entertained that opinion intended to incorporate the principle in the act. The diversity of opinion, on the subject, might have been a motive for not incorporating it into the act, and I have always *244 myself regarded it as a concession make by the majority lo the minority, and an abandonment of the principle of the ordinance. It will be observed, too, that the oath prescribed by the act, is to. be taken in addition to the oaths then required by law, and amongst these is the oath to “ preserve protect and defend the Constitution of the United States” — and the term Allegiance, when understood in reference to the context, obviously imports an allegiance to the State, consistently with the obligation of the citizen to the government of the United States, and — understood fn this sense — I am not able to perceive its incompatibility with the Constitution of the United States.
We are met, however, wdth the objection, that the Convention were clothed with all the power of the people, and having expressed their will in the Ordinance of March, 1833, that Ordinance superseded the constitution, and is imperative on the Court. ,
The foundation upon which ail our institutions are built is, that the will of the people is supreme — nor will it be questioned, that it is equally imperative, when expressed through agents regularly constituted by them for that purpose. But, surely, when any body of men, however august, take upon themselves to aet in the name of the people, an individual who supposes his rights invaded, may be permitted, respectfully, to ask for their authority, and to that request the courts, the organs appointed by the Constitution to administer Justice, are bound to respond.
If an unauthorised assembly should take upon itself to send forth an edict, in the name of the people, commanding obedience to its dictates, would that be binding on the citizen ?— Certainly not!' — And in what does that differ from the act of a regularly constituted body who assume powers not delegated by the people?
I have before observed, that the Convention was convened for definite objects, expressed and designated in the act which authorised it, and all who are familiar with its history know, that the convocation of it was long and successfully opposed, on a doubt suggested that its powers could not be limited— apprehensions were entertained that the unequal parish Representation in the Legislature would be corrected,, and it was not until this doubt was removed and public opinion had settled down in the belief that the powers of a Convention might be limited, that the Legislature could be prevailed on to pass an act calling a convention. This was, in all probability, one of the reasons why the Convention refused to consider the resolutions proposed in the Convention, by Mr. Middleton, from *245 Greenville, and Mr. Lowry, from Chesterfield, to amend the Constitution. But, that the people, in whom all power resides, should not have the power to limit the powers of their delegates to a Convention, involves a contradiction ; and I have before attempted to show that their power was so limited by the. act under which they convened, and the objects having been attained, their power ceased.
The third general proposition involves the question, whether the citizen owes allegiance to either the State or the United States, exclusively, or to them jointly?
It is not necessary to the purpose of this case, that this great and exciting question should be subjected to a Judicial determination, but as it has constituted a leading feature in the argument, 1 propose to offer a few general remarks on the subject.
Allegiance, (according to Sir Wm. Blackstone,) is the tie or ligamen, which binds the subject to the King, in return for that protection which the King affords the subject; and he proceeds to remark, that the thing itself, or substantial part of it, is founded on reason and the nature of government. In this simple definition, all the Common Law writers agree — and it appears to me to be ample enough for all practical purposes, without encumbering it with the subtleties and distinctions which are found in the books. It imports very clearly that the King is competent to protect the subject in the enjoyment of all his legitimate rights, and that the subject, in return, will obey all the commands, and discharge all the duties which the King may lawfully require of him. Now, it is apparent, that no such relation can exist between a citizen and another individual in a republic, for the obvious reason that that other is incompetent to afford the protection which is the reward of allegiance ; but I can perceive no impropriety in using the term allegiance to express the relations which must necessarily exist between the citizen and the governing power, in every well regulated government, whatever may be the form — I say, between the citizen and the governing power, because that power alone can afford the protection which is the reward of alie, giance.
The question then, arises, where does that power abide in South Carolina? Is it in the people? — taken as individuals, the citizens are all equal — taken in their aggregate capacity and without organization, they are the fountain of all power, but incapable of exercising it, on account of the want of some mode of expressing the common will and the moans of carrying it into effect.' There could be no allegiance, because there would be no protection to the citizen. But the people *246 have organized a government clothed with all the powers that are necessary to protect the citizen in the enjoyment of all his rights, privileges and immunities. It is that government which does protect the citizen, and to that government the allegiance of the citizen is due. If that had been a simple government, intended for the State alone, and confided to the administration of agents appointed by the State, and responsible to the State alone, no proposition, not even a mathematical axiom, could be more certain than that the citizen would owe allegiance exclusively to that government. But many of the powers of government, and those of the greatest importance, have been confided by the people to the government of the United States, whose .agents are not appointed by, or responsible to, the State, except in common with the other States ; and to that government is confided the preservation of many of the dearest rights of the citizen, and amongst these may be mentioned the guaranty of the Constitution of the United States, which secures to each State a republican form of Government. The government of the United States has also the right to require of the citizen to contribute of his wealth to its support, and to serve in its armies. That government is to all intents and pur. poses, as much the government of the people of South Carolina, as the State government. They have both received their sanction, and they have consented to be bound by them ; and if the conclusions ot logic can be confided in, for the same reasons that they owe allegiance to the State government, they owe it to the government of the United States — sophistry-may confuse the subject, but this must be the conclusion, when* ever the unerring test of truth shall be applied.
The usages of both the State and Federal Government, and the universally received opinion of the American people, concur in supporting this conclusion.
Treason, according to the common law definition, is a violation of the obligation of allegiance, and the authority conferred on Congress by the Constitution of the United States to declare in what it shall consist, and to provide for its punishment, necessarily presupposes that allegiance is due to the United States. It expresses, in a language not to be misunderstood, the opinion of the framers of that instrument. The act of Congress, before referred to, appointing an oath of allegiance to be taken by the officers and soldiers of the United States, is an exercise of the right, and if thé opinions of men eminently learned in the law, and profound in politics, are entitled to weigh any thing, proofs without number may be adduced. On the other side, the States, as in the examples before cited, of Massachusetts and Georgia, and there are some sis. or eight others, *247 have, either by some provision in their Constitution, or in tho absence of any constitutional restriction, required their officers, by laws, to take oatlis of fidelity and allegiance to the State. Now it is utterly impossible to reconcile these claims without supposing that allegiance is alike due to both — if not in degree, at least in quality. The Government of the State is a compound of the State and Federal Government, and to demand the allegiance of the citizen to one only and exclusively, is to require of him only half of his duty.
There are those, I am aware, who maintain that allegiance is due .to the people as the fountain of all honor and power. — - But political allegiance is altogether conventional. The people may, if they will, surrender all power and authority, and pledge their allegiance to a tyrant — and who can restrain them? Now, by the Constitution of the United States, the people of this State have surrendered to the United States (and whether as a Government or as political communities, or as a people, is immaterial to this question) a part of the sovereign power— the power of declaring war, and making peace, of coining money, &c. and these powers are to be exclusively exercised by the United States. Nor can the States wantonly resume them without a violation of tho faith pledged by the Constitution. A part of the supreme power of the State may then be exercised by the United States — consequently, allegiance is due to the United States, commensurate with those powers.
Let it be conceded, that the people of the State ma.y resume their powers at will — still, as long as they are rightfully exercised by the United States, to that power we owe obedience, and necessarily allegiance.
The declaration, that allegiance is not due to the United States, was, perhaps, first promulgated in the Ordinance of March, 1833, and that is accompanied by the concession that obedience from the citizen was the right of that Government. Now, if there be any thing in allegiance which is not comprehended in obedience, I confess I can’t comprehend it. But the notion, that allegiance is due to the State Government only, is at war with the common sense of the American people.'
The relations between the people and the government of the United States, is familiarly expressed, both in speaking and writing, by the term allegiance, and the idea certainly originated in the received opinion, brought down from the adoption of the Constitution; and reason about it as we may, that constitution has ascertained and fixed their relations, nor can any State without a violation of the faith pledged to support that Constitution, change or alter these relations.
That I may not be misunderstood, I'will, in conclusion, add *248 that my soltlod opinion is, that the allegiance of the citizens of South Carolina is due both to the State government and the government of the United States — that the State Constitution having prescribed the form of an oath on that subject, the Legislature had no authority to change, add to, or alter it. That the Convention having been called for a specific object, and that object having been fully attained and accomplished, the Legislature could not derive their authority to require an oath of allegiance, in a different form, from an ordinance of the Convention, subsequently passed. But, that, if the people should think fit so to amend the Constitution, as to authorize the administration of an oath of allegiance in the form prescri. bed by the act of the Legislature of the last session, there is nothing in the Constitution of the United States opposed to it.
I am, therefore, of opinion, that the writ of mandamus ought to issue.
DAVID JOHNSON.
Harper, J.
In determining on the validity of the Oath in question, it is first necessary to fix the meaning of the term allegiance. I am not aware that this can be better done than in the words of Sir Edward Coke, in Calvin’s case: (7 Rep. 8,) “ Legiance is a true and faithful obedience of the subject duo to his sovereign.” No doubt the term is of feudal origin, and was originally taken to express the service and fidelity due to the paramount Lord of the Soil. It is distinguished from fealty or fidelity due to any inferior Lord of whom lands are hol-den. Originally, I suppose, the term had no reference to any political authority. But from the time of the Norman Conquest, when the King became the Lord Paramount of all the lands in the kingdom, the service due to the highest feudal superior became confounded with the obedience due to the supreme political authority of the State; and it is in this latter sense that the word is now commonly used, and no doubt was used in the act we are considering.
The matter is explained by Blackstone: (4 Com. 366-7)— “ Under the feudal system, every owner of lands held them in subjection to some superior or Lord, from whom or whose ancestors the tenant or vassal had received them. And there was a mutual trust or confidence subsisting between the Lord and vassal, that the Lord should protect the vassal in the enjoyment of the territory he had granted him, and on the other hand that the vassal should be faithful to the Lord, and defend him against all his enemies. This obligation on the part of the vassal was called his fidelitas or fealty, and an oath of feal* *249 ty was required by the feodal law, to be taken by all tenants to their landlord, which is couched in almost the same terms as our ancient bath of allegiance; except that in the usual oath of fealty there was frequently a saving or exception of the faith due to a superior Lord by name, under whom the Landlord himself was perhaps only a tenant or vassal. But when the acknowledgment was made to the absolute superior himself, who was vassal to no man, it was no- longer called the oath of fealty, but the oath of allegiance, and therein the ten. ant swore to bear faith to his sovereign Lord, in opposition to all men without any saving or exception : contra omnes homi-nes fidelitatein fecit” “ But with us in England, it becoming a settled principle of tenure that all lands in the kingdom are holden of the King as their sovereign or Lord Paramount, no oath but that of fealty could ever be taken to inferior Lords, and the oath of allegiance was necessarily confined to the person of the King alone. By an easy analogy, the term of alie» giance was brought to signify all other engagements which are due from subjects to their Prince, as well as those duties which were simply and merely territorial.” So in Calvin’s case it is said, “ Glanville, who wrote in the reign of H. II, Lib. 9, Cap. 4, speaking of the connexion which ought to be between the Lord and the tenant that holdeth by homage, saith that mutua debet esse domini et fidelitatis connexio, ita quod quantum debet domino ex homagio; tantum illi debet dominus ex dominio, prae~ ■ter solam reverentiam: and the Lord (saith he) ought to defend his tenants. But between the sovereign and the subject, there-is, without comparison, a higher and greater connexion ; for as the subject oweth to the King his true and faithful legi-anco and obedience, so the sovereign is to govern -and protect his subject.” In this country we have preserved the theory of law that all lands are holden of the State. But whether we regard allegiance as due to the Paramount Lord of the Soil, or to the supreme political authority of the State, it follows that in its nature it is single and indivisible. There can be but one paramount Lord of the Soil, holding of no superior, and ■one supreme authority in the State, controlling all others, and subject itself to no control. And when the term has been used in its appropriate sense, as I shall have occasion to explain more fully in another part of this opinion, it has never been supposed that allegiance was capable of being divided.— Allegiance means the paramount duty of fidelity and obedience —that obedience which in matters of government is due in preference to all other obedience. From its very definition, therefore, it is incapable of being divided, and we should be beating the air, if in investigating the subject before us, we failed te *250 enquire where that first and highest obedience of a citizen of this State is due. That the Legislature, in passing the act, used the term in the sense which I have attributed to it, I think will hardly be questioned. By the ordinance of the Convention, passed on the 18th of March, 1833, it was declared “that the allegiance of the citizens of this State, while they continue such, is due to the said State ; and that obedience only, and not allegiance, is due by them to any other power or authority to whom a- control over them has been or may be delegated by the State.” This ordinance evidently contemplates the distinction to -which I have referred, between the inferior obedience due to other public authorities, and the paramount obedience, or allegiance, which is due to the sovereign authority of the State. Whether the act of the Legislature be regarded as founded on the authority of the ordinance or not, the latter may be properly referred to as a public expression of the sense of the State, affixing a meaning to the term, and I believe that no one in good faith doubts but that the Legislature did intend to use it in this sense and no other.
I have quoted the definition of allegiance, “ that it is a true and faithful obedience of the subject to his sovereign.” What is the meaning of sovereignty ? And who is the -sovereign in this country? It is to be lamented that many terms in common use are very inaccurately defined; indeed there are many of those in the most common use, and which men continue to repeat supposing that they understand them, to which, upon reflection, they will find that they attach no precise or definite meaning. Such are the words Sovereignty, State, Government, Nation, People. By sovereignty, is.commonly meant the aggregate of all civil and political power. Whatever the form of government may be, this sovereignty must exist as perfectly in one State as in another. “ However the several forms of Government we now see in the world at first actually began, is matter of great uncertainty, and has occasioned infinite disputes- It is not my business or intention to enter into any of them. However they began, or by what right soever they subsist, there is and must be in all of them, a supreme, irresistible, absolute, uncontrolled authority, m which the Jura summi im-perii, or the right of sovereignty, reside.” 1 Blac. Com. 48,49. It is most evident that in every State there must be some authority, whether lodged in one or many hands, or in one or more departments, which, controlling all other constituted authorities, is not itself subject to the control of any. Wherever that authority resides, is to be found the sovereignty.
It has been objected that according to the English Law, allegiance is. regarded as due to the King, and according to the *251 authority of Calvin’s case, not only in his political capacity, but to his natural person. This'is supposed to render the term inapplicable or unmeaning in this.country. But it is plain that allegiance is sworn to the King as representing the entire, civil and political authority of the State. Whatever notions may have been expressed of tho free institutions of the Anglo. Saxons, yet anciently all the authority of the State was supposed to be vested in the King. The Whittenagemote was summoned by the King himself; and though their assent was regarded as necessary to laws, yet they seem rather to have constituted a counsel, than a substantive branch of the Govern, ment. The act adapted was that of the King, though it derived additional weight and authority from being made with the advice and consent of his principal men- Sir James M’ln-tosh, in his History of England, 2 chap, observes, “ that under Athelstane expedients were resorted to, to obtain a consent to the law from great bodies of the people in their Districts, w'hich their numbers rendered impossible in a national assembly.— That monarch appears to have sent Commissioners to hold Shire Gemotes, or county meetings, where they proclaimed the laws made by the King and his counsellors, which being acknowledged and sworn to, at those folkmotes, became by their assent completely binding on the whole nation.” “ Wherever there is a doubt concerning the extent of the powers exercised by these great assemblies, we must throw into their scale the weighty consideration that the King, instead of fear or jealousy of them, felt a constant desire to strengthen,every important act of his Government by their concurrence.” Mr. Hal. lum, in his learned and profound disquisition on the constitutional law of England (2 vol. chap. 8.) says “the right of general legislation was undoubtedly in the King conjointly with his great counsel, or, if the expression be thought more proper, with their advice. So. little opposition was. found, in these as* semblies by the early Norman Kings, that they gratified their own love of pomp, as well as the pride of their barons, by consulting them in every important businéss. But the limits of legislative power was very indefinite.” From the same author we learn that there is to be found no unequivocal trace of county representation until the 49 Hy. 3, and the deputies of boroughs were finally and permanently ingrafted upon Parlia- - me t, by Edward I.
The form of enactment in the old British Statutes shews, that they were regarded as enacted by the King, though with the consent or on the petition of Parliament.
Magna Charta was a grant from the King to his Barons.
Hallurn informs us that the Charter of Henry the First “gives *252 his subjects the laws of Edward the Confessor, with the emeu, dations made by his father with the consent of his barons.” — In short, though the Anglo Saxons may have practically on. joyed a considerable degree of liberty, yet there was no defined limit on the power of the King. He was regarded as the source of all authority, and the functionaries of Government exercising any portion of power, were supposed to do so by do. legation from him.
And this was still moro true after the Norman conquest, and agrees with the inference which we should draw from the cha-, racter of the feudal system-. A military leader would find it wise to: consult his principal officers; he might find it absolutely necessary to the enforcing of his measures; but the act and decision would be regarded as his, and not that of his council..
Thus it is, that the King in England was regarded as sovereign, combining in himself all authority, and entitled to allegiance, or the first and highest obedience. Ant] in the time of Sir Edward Coke, it was regarded as due to the King not merely in his political but in his personal capacity. Because, it was said in Calvin’s case “ The King holdeth the kingdom of England by birth-right inherent, by descent from the Blood royal, whereupon succession doth attend; and. therefore it is usually said, to the King, his heirs and successors.” In the language of the times, the King was supposed to hold his throne by divine right, and it was impossible to separate his personal and political character. But the doctrine laid dolvn by Coke cannot be regarded as the law of England since the revolution which ended in the accession of William the Third to the throne. The calling of William to the throne was of itself an abjuration of the doctrine, and in the oath of allegiance now used,, the heirs of the King are no longer mentioned. William had no right to the throne by blood or inheritance, and allegiance could only be sworn to him in his political capacity.
There can be no doubt but in England the sovereignty, though.allegiance is still sworn to the King, as representing the entire authority of the State, actually exists in the Parliament of King, Lords and Commons. It is said in Jacob’s Law Dictionary,. “ In our Constitution, the law ascribes to the King the attribute of sovereignty, but that is to be understood in a qualified sense, i. e. as supreme magistrate, not as sole legislator,, as the legislative power is vested in the King, Lords and Commons, not in any of the three estates alone.” Blackstone — (1 Com. 51) after describing the Constitution of Parliament, says, “here then is lodged the sovereignty of the British Constitution.” Can there be any doubt but that an individual who, although by the personal command of the King, should *253 engage in resistance to the laws of Parliament, would be guilty of a breach of his allegiance, and might be punished for treason I If so, how can it be now argued that allegiance is due to the person of the King, or in any other manner than as representing the authority of the State ?
And why do we call Parliament sovereign 1 Because it possesses all civil and political power — (not merely legislative power, in the more restricted sense in which we use the word in this country.) Because by its acts it may control all individuals and constituted authorities within its territory, and is not itself subject to the control of any. It may be bound by the ties of good faith or morality; its acts may be resisted by force or condemned by opinion, but there is no authority on earth that can legally control or revise them.
I am aware that governments have often been spoken of as sovereign, and sometimes the legislative authority has been called sovereign. But this has generally been because they were in fact sovereign. The separation, bet ween the legislative, executive and judicial departments of government, is an idea of modern origin. The ideas of men in relation to government were formerly very much derived from the Asiatic Monarchies, where the King who promulgated, the laws, sat in the gate to expound them, and was literally the executioner of his own sentences. James the First supposed that he had a right to sit in his own Court for the deciding of causes. So Legislative power was supposed to include all power. Every thing might be regulated by law, and the executive and judiciary were regarded merely as the agents of the Legislature to carry their acts into effect. Not until the formation of our own government was there any well established distinction between ordinary legislation and those permanent and fundamental laws which we distinguish by the name of a constitution, nor any distinction with respect to the authority which should enact them. Every thing was referred to legislative power. But if there be an authority to alter, abolish, direct and con. trol the government, can we fail to refer sovereignty to that 1
In a despotic monarchy the monarch is properly called so. vereign, though his power may be in fact much limited by the fear of provoking resistance. There is no authority in this form of the government to control him or reverse his acts, and all other constituted authorities exereise their functions as his delegates. Some writers have maintained a natural sovereignty in the people of every country, and their right to alter and abolish their governments at pleasure; but this is a sort of right which can never be the subject of investigation in Courts. There may be such a natural and moral right; but this is- *254 •I1”*0 distinct from legal right. Under such a government there is no method of appealing to the people and taking their suffrages, nor would any suffrage of theirs have the authority of law. If the people should interfere, to change such go* vernment, it would not be by law,, but by force. It is in allusion to this that Burlamaqui says, vol. 2, p. 13 “ Hence the distinction which some political writers make between real so-vereignty’ which always resides in the people, and actual sorer-eignty, which belongs to the King, is equally absurd and dangerous. For it is ridiculous to pretend that after the people have conferred the supreme authority on the King, they should continue the possession of that very authority superior to the King himself.” No authority has ever been regarded as. sovereign whose acts are subject to bo legally controlled or an* nulled by a superior authority.
Regarding then allegiance as the obedience due to the Sovereign, I proceed to enquire where the sovereign authority of this State is vested. And first,. I shall consider it without reference to the connexion which the State has formed with the other States of the Union by means of the federal constitution,, but regarding it as separate and independent. And here what, possible doubt or question can arise ? The Constitution of this State declares that “ All power is originally vested in the people, and all free governments are founded on their authority, and are instituted for their peace, safety and happiness.” The same thing, with some variation of form, is repeated in every constitution of the several States.of the Union, (except that of Rhode Island,, which still retains the royal charter) as in that of North Carolina, " that all political power is vested in and derived from the people only.” If there be any principle which may be regarded as fundamental and universally acknowledged in this country, it is this — that sovereignty resides in the people, and all the authority of government is delegated from them. And this is not that imaginary sovereignty of the people which has been supposed to exist under even a despotic monarchy. The constitution itself has provided in what manner the people shall be appealed to, in a Convention called by two thirds of both branches of the legislature. And their acts have the authority of law, and of the highest law. They have power over the government, to modify, control and direct it; and this has no analogy to the revolutionary power, which is attributed to the people elsewhere, of changing their government. They may abrogate any act of the government, and all constituted authorities are bound to respect and obey their determination. There is no power in government which is not held by delegation from them, and no autho* *255 ■pity in government which can reverse or control their acts.— Let it bo recollected that I now speak of the State as separate and independent, and can we hesitate in assigning the sover. eignty 1 It is hardly necessary to remark on some matters which were urged in argument — as that the people are bound by the rules of duty and morality. Undoubtedly they are thus bound. They are responsible to opinion, they are bound by good faith, they may be resisted by force or subdued by superior power, but their acts are not subject to the legal control of any-constituted authority. To suppose so would be a plain absurdity, as all constituted authorities are constituted by them and derive their power from them alone.
When it is said that allegiance is tbe obedience duo to government (and writers have used such terms) the only difficulty arises out of the ambiguous meaning which has been affixed to the word government, It has been sometimes taken to mean the chief executive authority ; sometimes the legislative authority ; sometimes it is used as synonimous with State or Nation; sometimes to express the aggregate of all political power, whether for the purposes of ordinary administration or of changing the fundamental laws — as in the instance of the British Parliament. Indeed, it is difficult to use the term frequently, without confounding its various senses, and I am aware that in some degree I may be guilty of this. In this latter sense it is coincident with sovereignty ; and thus used, we should say in this country, that the people constitute the government. But this would be confounding things which our institutions have separated — the supreme or ultimate government of the people, with the ordinary government which they have created. In M’Cullock v. Maryland, 4 Wheat. 403-4, a distinction is made which I confess I find it difficult to understand, between the people of a State acting in Convention, and the sovereignty of the State. It would seem, though not very distinctly expressed, that sovereignty is attributed to the State Legislatures. But surely, in the common understanding of all mankind, sovereignty has been understood to mean the highest and ultimately controlling authority in matters of government; and will it be said that an act of the Legislature is of higher authority than an act of the people assembled in Convention ? How then is it that we daily declare acts of the Legislature as void for re. pugance to the Constitution ? If allegiance means the obedience due to government, does it mean obedience to the act of the Legislature 1 But if an act of the Legislature be inconsistent with an act of the people in convention, am I not bound to disobey it ? If allegiance be the obedience due to government, do I owe it to every functionary of government 1 To the *256 most subordinate magistrate or ministerial officer 1 Who lias ever before thought of using the term in this sense ? My alie-giance to the sovereign binds me to obey all those function” aries, when they act in conformity to the authority which the sovereign has delegated ; but the same allegiance binds me to disobey and oppose them, when their acts are not so authorized. It seems to me that thus to interpret the term, would be to render it utterly unmeaning, and to defeat the intention with which we perfectly well know the legislature to have used it.
When it is said, as in argument, that allegiance is the obedience and fidelity due to the constitution, and that the oath to support the constitution is in effect an oath of allegiance, it seems to me again that the word is used in a sense entirely new and unauthorized. Laws of every sort derive their sanction from the authority which enacts them. I am bound by an act of the Legislature because I own obedience to the Legislature. I am bound by an act of the people in Convention, because my first obedience is duo to the people. Allegiance has been ever understood to have relation to the enacting or ordaining authority, and not to the act which is the result of the exercise of authority. There may be acts of the people which are intended for a temporary purpose, and which cannot properly be ranked among those permanent, fundamental laws which we denominate the constitution. Yet if the people be indeed sovereign, do I owe less obedience to those acts that to the constitution itself?
I come now to consider the question as the state stands in relation to the other states of the union, by the adoption of the federal constitution. And here it seems to me that the only question to be determined is, whether our system of government, under the constitution of the United States, constitutes a single state or nation, or a confederacy of States. I would direct attention particularly to this point, because I am aware that vague and undefined notions have prevailed, that our system is something utterly anomalous and unprecedented ; and men have been undetermined whether to class it as one or the other. Yet I cannot conceive that it should not be one or the other. It is true that a single, or as it is commonly called a consolidated State, may have many of the characteristics of a confederacy; as in France, where the local governments of departments are established, exercising many of the powers of legislation and government, but subject always to the control of the supreme or central government. So, as we shall see, there may be a confederacy having many characteristics of a consolidated state. But I cannot comprehend that in its essen-*ial character, if rightly understood, things should be so bal- *257 sliced and arranged as that it should constitute neither or both.
The essential character of a Confederacy is that the States remain sovereign ; and the test of that sovereignty would be, to enquire whether if one State should think proper to withdraw from the confederacy, all citizens and constituted authorities within its territorial limits would be legally bound to obey and sustain that act, or would owe a higher obedience to some other power.' If such higher obedience would be due elsewhere, the State (improperly so called) would be in no degree sovereign ; it would be but a department of a larger consolidated State. If the State would be thus entitled, in the last resort, to command the obedience of its citizens and constituted authorities, it is a perfect sovereign according to the view I have taken of sovereignty. Itissaidby Vattel,B. l,c. 1,54, that “ every nation that governs itself, under what form soever, without any dependence on foreign power, is a sovereign State. Its rights are naturally the same as those of any other State.” Yet, s. 10, it is said, “several sovereign and independent States may unite themselves íogethér by a perpetual confederacy, without each in particular ceasing to be a perfect State. They will form together a federal republic: the deliberations in common will offer no violence to the sovereignty of each member, though they may in certain respects put some constraint on the exercise of it, in virtue of voluntary engagement. A person does not cease to be free and independent when he is obliged to fulfil the engagement into which he has very willingly entered.”
“ Such were formerly the cities of Greece ; such are at present the seven United Provinces of the Netherlands, and such the members of the Helvetic body.”
So Burlamaqui,2 vol. Part?, c. 1, s. XL,in relation to compound forms of government — “ these may be defined an assemblage of perfect governments, strictly united by some particular bond, so that they seem to make but a single body with respect to the affairs which interest them in common, though each preserves its sovereignty full and entire, independently of the others.”
If it be indeed a confederated republic, it is immaterial what powers have been granted to the central government; these cannot in any degree impair the sovereignty of the States. The State is still considered as governing itself, because, according to Vattel, “ it is governed by virtue of its voluntary engagements”, and it depends on itself at any time to throw off those engagements, and -to release its citizens from that authority which, by its sanction and permission, has been exercised over them ; and this, although the confederacy has been stipu *258 lated to be perpetual. I need hardly say that such a State'is bound to its confederates by the tye of good faith, and in case of separation is answerable to them as one nation is answer, able to another. They may make war upon it, and if they can, subdue it. But this is the only sort of control which can be exercised over a sovereign. Such has been the understanding of the confederacies mentioned by Vattel, and of all the other confederacies that ever have existed. I have insisted on these principles, because I believe them to be simple and obvious, and according to the common understanding of mankind, though they have been in some degree lost sight of in our country; and I am aware that a return, even to simplicity, from confused and undefined notions which have commonly prevailed, is apt to be regarded as innovation and refinement.
That the United States, previously to the adoption of the Federal Constitution of 1787,^ere merely a confederated republic, has been on all hands conceded in argument. And though a contrary opinion has been thrown out in some portion of the Union, yet this seems to have been rather the effect of an unusual method of thinking, or a desire of originality, than to require examination or refutation. There was no characteristic of a single consolidated State. No law could be carried into effect within the¡limits of any State, but by the immediate authority of the State itself. The articles of confederation of 1778 expressly declare that each State retains its sovereignty, freedom and independence. So early as 1776, and before the declaration of independence, this State had adopted for itself a separate constitution. (See Ramsay’s History of South Carolina, chap. VII. Sec. 3.) The only argument for the opinion seems to have been derived from confounding together the different senses which have been attributed to the word “ nation.” As having a common origin, common language, and common history ; as being united by the highest interests, in the bonds of the strictest alliance, and in peace, and in war, pursuing common objects, we might be justly called a nation ; as the nation of the Greeks or of the Germans, much less closely united than ourselves, might be spoken of. In this sense, we may hope long to continue a nation. But this is very distinct from the other sense of a single body politic, united under the same sovereignty. If the States were sovereign members of a mere confederacy previous to the adoption of the present Federal Constitution, we are next to en-quire whether they have ceased to be so, in consequence of their act in adopting that constitution. I suppose that the people of the several States might abandon their separate sovereign character, and become consolidated in a single 'sovereign *259 people or nation. Whether they have done so, must be made out from the character and provisions of the constitution itself., Unless it can be made out from these, we must conclude the States to remain sovereign as before. And in drawing so im. portant an inference as that the people of the States have abandoned the right of independent self government, which every nation in the world, even the weakest and smallest, has prized so highly, we may properly expect it to be made out, not from loose expressions and ambiguous provisions, put by the clearest expression or the strictest and most necessary implication. In our very complicated system, there may be provisions very difficult to reconcile to the supposition of the States retaining perfect sovereignty as independent members of a confederacy, as on the other hand there may be as many and perhaps greater difficulties in supposing that they have abandoned the character and become parts of a single consolidated state. But to raise difficulties is not to establish a proposition.
The parts of the constitution from which it is concluded the states have abandoned their sovereignty, seem to be the following:
The introductory words of the constitution “We the people of the United Statesimporting that it was adopted by the people of the United States as one people, or that they thereby constituted themselves one people :
The provision that “ This constitution and the laws of the United States which shall be made in pursuance thereof, and all treaties made or which shall be made, under authority of the United States, shall be the supreme law of the land ; and the Judges in every State shall be bound thereby, any thing in the Constitution or laws of any State to the contrary thereof notwithstanding
The provision, that the constitution may be amended by the Legislatures or conventions of the people of three fourths of the States t
The provision that the United States shall guaranty to each sfate a republican form of government:
The provision to punish treason against the United States :
An inference is also drawn from the power given to Congress to prescribe a uniform rule of naturalization.
Now it may be observed that,here is nothing like an express renunciation of sovereignty | and notwithstanding their Union in this constitutional compact, the States continue to exist as states, and exercise most of the functions of government as before. I should hardly think it necessary to make any remark on the introductory words of the constitution, if others had not laid stress on them before.
*260 The words certainly may import the people of the several states as distinct bodies politic. The federal Government has been called a government of the people, as distinct from a government of the States. This is said in McCullough v. Maryland. The chief Justice adds “ It is true, they acted upon it in their several States, and where else could they iiave assembled ? No political dreamer was ever wild enough to think of breaking down the lines which separate the States, and of compounding the people into one common mass. Of consequence, when they act, they act in their states. But the measures they adopt do not on that account cease to be the measures of the- people themselves, or become the measures of the State governments.Certainly no one ever supposed that the federal Government was the work of the State Governments; though not less the work of the States. What arc the States in a political sense but the people of the states in their sovereign character ? It cannot be meant that forming one American people, their voice was taken in the territorial divisions of States ; as within a State the voice of the people is taken in their counties. Is it necessary to ask whether each State did not adopt the constitution, as a distinct, independent, sovereign body politic, and whether it was not bound by the constitution solely in consequence of its separate act in adopting it ? The States — each State for itself — delegated to the federal Government certain specific and limited powers. It is not pretended that that government can exercise any power not granted. It remains subject to be controuled, altered or abo-. lished, by the States, and can therefore possess no portion of sovereignty. Is not this saying in other words that the States retained their sovereignty ?
The provision that the constitution and laws made in pursuance of it shall be the supreme law of the land, has been much relied on. Yet I would remark that it is no more than must necessarily have been implied, if there had been no such article in the constitution. The words are emphatic, but the meaning of it is, that the federal constitution and laws, when they come into collision with the constitution or laws of a State, shall take place of them, and be regarded as of higher authority. But without this, there could have been no federal government. The State governments are of general, and the federal government of limited powers. The constitution and laws of each must continually come into conflict. No tax could be collected ; no act of jurisdiction could be exercised by any federal authority within a state which would not be a violation of the constitution or laws of the state, unless it were justified by the federal constitution and laws. If they are to *261 have any operation at all, it follows then of the strictest necessity, that that constitution and the laws made in pursuance of it, when they do come in conflict with the State laws, must be regarded as of superior authority. It is regarded as material, that they are not only supreme in respect of the laws, but also of the constitutions of the States — the acts of the sovereign people themselves. All the States had constitutions at the time of forming the federal constitution, and if there had been no such article as we are considering, the very act of adopting the federal constitution would have been of itself an abrogation of any part of the state constitution which came in conflict with it. And this superior authority the federal constitution and laws must continue to have while they continue to exist. But by what authority is it, that they are the supreme law of the land within the limits of a state ? To what other' authority on earth can it be referred than of the people of the State in their sovereign capacity adopting the federal constitution? And by what other authority do they continue to bind the citizens of the state ? So far from interfering with any duty or obedience due by the citizen to the constitution and laws of the United States, or the oath which I have taken to support protect and defend the former, the very allegiance which I owe and which I swear to the State, binds me to support and-obey them as the supreme law of the land. But it may be observed that an oath to support the constitution is not an oath of allegiance to the State. If the people had established a double government within the limits of the state itself, one charged with the functions which have been delegated to the federal government, the other, as it now is, exercising generally all powers not delegated to the first, the acts of the former must necessarily have had the same supremacy. There would bo nothing impracticable in this. But instead of establishing the government which is charged with its foreign relations &c. for itself alone, the state has established one in conjunction with other sovereign states.
That the federal government may carry into effect its laws within the territory of a State; that it is called, and acts as a government; that it may affect the persons and dispose of the property of individuals, without any direct concurrence of tho States; have been used as arguments against the sovereignty of the States. But the difficulty arises only from confounding things which we have been the first to separate, and which we must necessarily separate, sovereignty and government.— For some purposes there is a consolidated government, but there is no consolidation of sovereignty. Regarding the federal functionaries as acting within the territory of a State un *262 der the sanction and authority of the State, they become the functionaries of the State itself, and do not in any degree detract from its sovereignty. This has been common in some degree in other confederacies. The States General of Hoi* land- were called, and were a government, and conducted foreign relations ; yet who ever doubted but that this was a pure confederacy ? Under our old confederacy, military officers were appointed by the Common Counsel or Congress, who restrained the liberty of citizens within the States, and military tribunals exercised jurisdictien — Courts of admiralty were ap. pointed, which exercised jurisdiction over persons and property. Nay, more than this, the tribunals of a power entirely foreign have been allowed to exercise jurisdiction within the limits of a State confessedly sovereign. Such tribunals now exist in Turkey, which is certainly sovereign, though perhaps overawed by superior power. Foreign Ecclesiastical tribunals were permitted to exercise jurisdiction over the subjects of every government in Europe, even to the establishment of the inquisition. They were permitted in England by William the Conqueror, who even allowed appeals to Rome; though he undoubtedly was every inch a sovereign, and rejected with indignation the Pope’s demand of homage: (4 Blac. Com. 105; M’Intosh’s Hist. Eng. chap. 3, ann. 1087.) They long continued to exercise jurisdiction in England. The subjects of coin and currency, and of weights and measures, are subjects of common interest to the whole commercial world. If all the governments of Europe should unite in appointing a common agency to regulate these matters and to punish offences against their regulations in the dominions of each, would they be less sovereign on that account ? In all these instances, the jurisdiction must be regarded as exercised under the authority of the sovereign in whose dominions they are exercised, and it must depend on his good faith or his prudence how long they shall continue to be exercised. How vain, from these characteristics of the constitution, to infer the consolidated character of our system!
So of the argument drawn from the nature of the powers granted to the General Government — to make war and peace; coin money; punish treason, &c. which are said to be powers appertaining to sovereignty. This may properly be said in other countries where the sovereign exercises those powers in his proper person. But in this country, the sovereign exercises none of the powers of government directly and in person.
Whether the powers of government be greater or less, can make no difference. In one sense they may be said to be so *263 vereign powers, as being exercised by delegation from the so. vereign; but to speak more appropriately, delegated power is the converse of sovereign power. The sovereign power of the people is not delegated but recognised.
The next provision of the Constitution from which the con. solidated character of our system has been, it seems to me somewhat singularly inferred, is that which gives to three, fourths of the States the power of amending the Constitution. Here, it is said, is the ultimate sovereign power, which may control the act of the people of a single State, and modify their institutions at its pleasure; and how can a'people be call-cd sovereign, which is liable to be thus controlled? Let us first see how the matter would stand if there were no such provision in the Constitution. In that case, I take it to be clear that as no State could be bound by the Constitution till it had adopted it for itself, so no amendment of the constitution could be made but by the • assent of every State of the Union. It was indeed argued, but I apprehend without due reflection, that in case of such omission, the power of amend, ment would have been with a majority. A majority of what? of the States, or of the aggregate people? This argument could only be sustained by taking for granted the whole matter in dispute, and assuming that we have formed one consolidated people ; and then how would you infer that a mere majority might alter the Constitution ? But it needs no further comment. In the case we are supposing, then, no State could be bound by any additional article or stipulation but by its own express assent. In that case'it- might be said, as now, that the sovereignty was not in the States separately, and severally, but in the aggregate of all the States together, because their united act might control the act of one. But this is the condition of every confederacy which has over existed or ever can exist. It needs no sage to tell us that many sovereigns may do what no one singly can do ; extending the effect of their acts over the territories of all. But in every confederacy, by the assent of all the members, the acts of one may be controlled or abolished. But this is by his own assent, and it is by his act alone that the effect is brought about. The vefy fact, then, that there was reserved to the States the power by their unanimous assent to alter or abolish the federal constitution, would be entirely conclusive that no sovereignty was possessed by that government, but that it was reserved to the States— not aggregately, but severally. No one could be subjected to any new institutions but by his own separate assent. The idea of several States — distinct bodies politic — constituting one aggregate sovereignty, is entirely a new one. But in relation *264 to tlie matter we are considering, the case is the same exactly^ there being such a provision of the constitution, as if there were none such. It was justly conceded in argument by one of the counsel who argued against the separate sovereignty of the States, that it could make no difference that the power of amendment was given to three-fourths. As in a State, the act of a certain majority is regarded as the act of the whole people, so the act of this majority of the States, is taken as the act of the whole. By adopting the constitution without the provision, the State would have bound itself as a sovereign, to submit to and perform all its articles and stipulations, and - by assenting to and adopting any amendment, it would have been also bound. By adopting the constitution with this provision, it has in like manner bound itself to submit to such alterations as may be made by three-fourths. It is thus by its own sovereign act and assent that any new article can have effect with, in its territory. I find from a late historian, that when Appen-zoll was admitted into the confederacy of Swiss cantons, in addition to other unequal conditions, the other confederates “ reserved the right of adding to or taking from the articles of the treaty at their discretion.” Now here was a treaty of confederacy in which the contracting parties were unquestionably and completely sovereign, and yet less than the whole might bind the remaining member without its direct assent. Yet that member was only bound as a sovereign, and restrained merely by good faith or the dread of superior force from renouncing the compact at any time. If this be so, how can any inference bo drawn against the separate sovereignty of the States, because loss than the whole may add to the articles of our constitutional compact? And if we had no such instance, would it not bo easy to conceive that the Holy Alliance of European Sovereigns might, without detracting in any degree from their sovereignty, stipulate that upon the concurrence of a certain majority of the contracting parties, war should be declared on behalf of all? The features of the Constitution which I have examined are those which have been most frequently and most plausibly relied on to establish the consolidated character of our system. The others may perhaps bo des-patched more summarily.
“ The United States shall guarantee to every State a republican form of Government.” Here, it is said, is a plain restriction on the power of the people of a State to model and control their government at their own pleasnre. But how “ guarantee ?” By law or by force ? For if it is intended by the latter means, there is nothing inconsistent with the absolute sovereignty of the people. All sovereigns are liable to that con- *265 irol. If the people of the State should establish an hereditary monarchy, or any other constitution not republican, could the Congress of the United States, by law, abolish that Constitu. tion, form another for the State on republican principles, and impose it on the people? Could a Convention of the States do this? This is a mere absurdity. The Constitution of the United States certainly contemplates no such thing, and that would not be a republican government which was forced on the people against their will. The only meaning which I can attribute to the article, is that which was given in argument— that if a State be attacked by external force and a government imposed on it, the arms of the Union shall be employed to re. pel that force, and leave the people to form their own constitu. tion. How could the people be compelled to elect representatives, if they had abolished a representative government ?— The people of the State in relation to this matter could only be controlled by force, and not by law, and this does not derogate from their sovereignty. — Nearly all the powers of Europe, by the compact called the Pragmatic Sanction, guaranteed the succession of Maria Theresa. So England and France guaranteed the Spanish succession. Yet Spain and the German States were not less sovereign on this account.— The guarantee was to be made effectual by arms.
Treason may be committed against the United States, and it is said that treason in its definition is an offence against allegiance. Undoubtedly any citizen who should levy war against the United States would be guilty of an offence against, his allegiance, even supposing the States to be separately sovereign. The Constitution and laws of the States are the institutions of his own sovereign, to which he owes obedience ; yet it is properly called treason against the United States, because the war is levied against the States in their united capacity, and it would be only effected phraseology to call it otherwise. Suppose the power of punishing treason had not been given to the Federal Government, would it have possessed that power ?— It possesses no powers but those which are given directly or by necessary implication. It would have been a bold construction by which this power should have been assumed.— But in that case, is there any doubt but that a State might have punished one of her own citizens who had levied war against the United States, as for a breach of his allegiance to herself? It was proper to give to the common government jurisdiction of an offence against the States in their confederated capacity, but this has nothing to do in determining the consolidated or federative character of our system. If the svstem be federative, then it is the breach of his allegiance to *266 his State that actually constitutes his treason, and he could not commit treason by any act dono in pursuance of the command of his State. If we aro a single nation, then it is the breach of allegiance to that which makes his treason. But nothing is to be inferred one way or the other from the mere fact that the common government has power to punish the offence.— Besides, other offences than a breach of allegiance to the so. vereign have been distinguished by the name of treason, and supposing the States to be a more confederacy, the offence of levying war against them in their united capacity would naturally have been termed so.
No doubt a citizen of one of the States of Holland might have committed treason against the confederacy, by levying war against them in their united capacity.
It is said that there may be a citizen of the United States, who is not a citizen of any State, and the instances are put of an inhabitant of the District of Columbia or of a Territory.— The Constitution provides that “the citizens of each State'shall be entitled to all the privileges and immunities of citizens in the several States.” Does this contemplate a citizenship of the United States as distinct from being the citizen of a State ? And there was a similar provison in the articles of confederation of 1778, and the term “ citizen of the United States ” was used as commonly and as appropriately before the adoption of the constitution as since. Congress has the power to prescribe an uniform rule of naturalization. Unquestionably.— As the citizen of a State once admitted is entitled to the privileges of a citizen in every State, it was proper that the common government should prescribe the terms of admission, as a security against improper citizens. But what has this to do with the matter we are considering ? With respect to the Territories. Some of the confederacies which have heretofore existed — and pure confederacies — have possessed, and all plainly might possess, subordinate dependencies, their joint property and subject to their joint government. Such are our territories. With respect to these, the States may be said to be sovereign in their united capacity; and men may call the inhabitants of them citizens of the United States, if they will; but what has this to do with the rights of the States ? If Congress may authorise the naturalization of a foreigner in a territory, I suppose he would be in the same condition as an inhabitant born and reared in the territory. To argue from the civil condition of such an one within a State, or from the condition of the territories in case of a separation of the Union, would be an attempt to illustrate that which is unknown, from that which is more unknown.
*267 It is difficult to say from what source zeal may not draw arguments, but I believe I have considered the principal features of the Constitution from which the renunciation of sovereignty by the States has been inferred. With.respect to these and all others which may be relied on, permit me to enquire — suppose an amendment had been added to. the Constitution, declaring in express terms, that “ each state reserves to itself its separate and perfect sovereignty as the member of a confederated republic,” would that have been, in any degree, incompatible with the provisions of the Constitution in question, or derogated from or impaired them ? Might they not have all the operation and effect, to every intent and purpose, that they now have ? There would still be a people of the United States; the constitution and laws of the United States would still be the supreme law of the land; the constitution might still be amended by three-fourths of the States; the United States would still guarantee to each state a republican form of government ; treason against the United States would still be punished ; Congress might still prescribe an uniform rule of naturalization, and we should still possess our territories. The renunciation of sovereignty is implied from those particulars, but must not that implication be manifestly fallacious, all the grounds of which are consistent with a state of things exactly the opposite of that which is inferred? Indeed, in adopting the Constitution, Virginia did expressly reserve her sovereignty, and so I believe did New York. Did this mean nothing? or in spite of the express reservation, are we to. suppose that they renounced sovereignty 1 Or can we conceive that some of the States of the confederacy retain their sovereignty, while others have parted with it ?
It has.been admitted in argument by all the counsel who have argued against the oath of allegiance,^with one exception, that in case of a secession of the State from the Union, the citizens and constituted authorities of the State would be bound to obey and give effect to that act. They are not perhaps aware that they have admitted every thing that is in dispute. If this be not a confederacy merely, in which the States retain their perfect sovereignty, then the separation of the State from the Union, with the determination that the laws of the Federal Government shall no longer be executed 'within the State, would be merely an act of rebellion; and shall constituted authorities, and above all Courts of Justice, be called on to sustain an act of rebellious force ? The right of secession has been termi ed a right of revolution. I regret to observe the want of precision in the ideas which have been thrown out on this subject. That is a sort of right which, as I before observed* can never *268 |J0 the subject of discussion- in a Court of Justice, which is conversant only with matters of legal right. The term revolution is one of those which have been used in various senses.
Sometimes any change is called a revolution; sometimes only a great or fundamental change; and in this sense it would be impossible to determine what degree of change would amount to revolution. But in its proper meaning, a revolution *n g°vernment's that change which is brought about by means of force or terror, and without the authority of law. Is it t0 this sort of revolution that courts are to give effect ? Man has a natural or moral right to resist oppression; but this is not a legal right. He is bound to obey the laws, and Government has a legal right to punish him if his resistance should prove ineffectual, and Courts of Justice are bound to do so, if he be brought before them for the purpose. If our Federal Constitution be, as we suppose, a compact of confederation merely, the States retaining their perfect sovereignty, then, consistently with the constitution itself and my oath to support it, I am bound to obey the mandate of the sovereign, commanding that that Constitution shall no longer have effect, nor the federal laws be executed within its territory. But if the State be not the sovereign in the sense which I have given to tlio word, then it would be no more than if the people of a District within the State should determine that the laws of the State should no longer be executed within its limits. Would this be, any thing more than an act of rebellion? and would not an officer of the State within that district, even although elected by the people of the district itself; be bound by his duty, and his oath to support the constitution of the State, to go on to execute the laws and suppress that insurrection ? I have sworn to support the Constitution of the United States; but unless my State be a sovereign, which having alone imposed that obligation, alone has the right to discharge it, could I, in the event of an act of secession, sustain that act in my official capacity, and refuse to give effect to- the constitution of the United States, without a most flagrant and palpable violation of my duty and my oath? And it may be observed, as an inference of the strictest necessity, that if the people of the State itself be this sovereign authority in the last resort,'to which obedience is due in preference to any other authority, then if they should think proper to declare that a particular law of the federal government should no longer be executed within their territory, though this might be a breach of their faith pledged to the constitutional compact; though it might justify the other States of the confederacy in renouncing the compact altogether, or be of itself a virtual renunciation of the compact, yet *269 all citizens and constituted authorities within the State would be bound to obey and give effect to, the act of the people. To this extent, they would be released from the obligations which the State on their behalf has contracted to the other States of the Union.
I should have been less willing to express these views, if I thought, as many seem to do, that by thus laying bare the foundations of our institutions, they would be in any degree weakened. On the contrary I believe — and the opinion is founded on no slight or hasty reflection — that it will tend to strengthen them'; and that on these principles being well and thoroughly understood, depends the harmony of our Union, the permanency of its institutions, and the success of our experiment in government. Every State has a sufficient inter, est in the Union, from the strength and security it derives from it, and can have little temptation to separate from it or arrest the operation of its laws, but on the full belief that it suffers injustice from its confederates. The State which interposes its sovereignty, will necessarily be of the weaker party — of the minority, and though sovereign, liable to be assailed by superi- or force. This will be a security against the hasty and injurious interposition of its power. But what other security is there against the injustice of majorities, having the greatest interest and temptation to commit injustice ? Does the experience of the world inform us that it is less necessary to guard against the abuses of power, than against the excesses of weakness'?
When it is said that there is a double allegiance due to the federal and State governments, it may be asked, in case of the separation of the State from its confederates, to whom will it then be due. Those who contend for the higher obedience as due to the federal authorities, in fact contend for exclusive allegiance, in the same sense that others contend for exclusive allegiance as due to the State. Will the citizen be at liberty to choose his allegiance ? That would be to say that he owes no allegiance at all. The highest obligation of a citizen, imposed by nature as well as by law, cannot be the subject of choice. Will entire allegiance be due to both ? Then in case of conflict, he must necessarily be a traitor to one, and liable to punishment. This would be a hard and intolerable condition of the citizens of a country calling itself free. As I have said, in the ordinary progress of the government the citizen’s alie, giance to the State will detract nothing from the duty and obedience which he owes to the laws and constituted authorities of the federal government, but on the contrary- will be an additional sanction to them. Only in the case of a final and *270 irreconcileable conflict of authorities, his first duty will bo-due where nature and .right feeling would direct it — to the immediate community in which he lives, and to which he is united by his most intimate associations. I conclude that under the Federal constitution the allegiance of the citizen is due to. the State, and consequently the oath prescribed by the legislature is not in violation of that constitution.
I am next to consider it with reference to the constitution of the State. And here, if we were to urge it as adopted under the authority of an Ordinance of the people, there could be no question on the subject. It would have the same authority as the constitution itself; it would be an act of sovereign aulho-rity, which neither this court nor any other constituted authority could revise or conlroul. Whatever authority this court or any other constituted authority in this State possesses, it pos-esses by delegation from the people, and is exercised in their right. What they have failed to delegate, even if it operates injuriously and in bad faith towards their confederates, the Court cannot possess. For this Court, then, to sit in Judgement on the validity of an act of the people, in reference to any other authority, would be a manifest absurdity. But the question was made whether the Convention which passed the Ordinance was not limited by the purpose for which it was assembled ; and I am of opinion that it was so limited. And this detracts in no degree from the sovereign character of its act when within that purpose,. We have no authority to judge of, revise or control any act of the people ; but when any thing is. presented to us as the act of the people, we must of necessity' judge and determine whether it be indeed their act. The sole difficulty seems to me to have arisen from confounding together the authority attributed by the constitution to the people, with that of the convention. Certainly the convention was not the people for any other purpose than that for which the people elected and delegated them.
An argument was drawn from the supposed absurdity of the Legislature, an inferior authority, putting limits to the power of its superior and creator. Bu,t I think it is not a correct stating of the question. The question is of the authority of the convention. An Ordinance is produced to us passed by a certain number of individuals assembled at Columbia. This gives it no authority as an act of the people. But we are told they were elected by the people. This, however, is not enough. For what purpose were they elected by the people? Tore-present their sovereignty. But was it to represent their sovereignty to every purpose, or was it for some specific purpose ? To this no other answer can be given than the act of *271 the legislature under which the convention was assembled. Certainly the people may, if they will, elect delegates for a particular purpose, without conferring on them all their authority. To deny this, would be to detract from the power of the people, and to impose on them a most inconvenient and dangerous disability. If before the adoption of the present constitution, the people electing delegates in their primary capacity, had, by a majority of their ballots, specified a particular measure to bo considered and decided in convention, will it be pretended that the convention would have possessed authority for any other purpose ? But the Legislature in passing the act for calling together the convention, were not acting in their legislative capacity. The act has no relation to the general powers of legislation. They were the agents of the people for this particular purpose, and intrusted by the constitution to speak their voice. But suppose there had been no such provision in the constitution, and the legislature had passed an act recommending to the People to meet in convention for a speci-fiepurpose, and inpursuancc of the recommendation the people had elected delegates accordingly, what right or reason would I have to conclude that the people intended to intrust this convention with their authority for any other than the purpose specified ? This would be plain usurpation on the power of the people.
It was said-that the governor is the agent of the people for the purpose of convening the Legislature on extraordinary occasions. If he should assemble the legislature for a particular specified purpose, would their authority be restricted to the consideration of the specific matter submitted to them 1 Certainly not. The Legislature has been elected by the people for the general puposas of Legislation, whatever these may be, and it is not for a co-ordinate authority to restrict their power. The powers of the Legislature have been fixed by the constitution, and there is no other authority in government which can add to or take away from them. The powers of a convention have not been thus fixed, and it is for the people, if they will, to fix and define them in every particular instance. There has been no convention called, I believe, in this or any other State, which was not called for purposes more or less specific, and with powers more or less limited. Take the instance for example of the convention which was called to consider of the propriety of adopting the Federal constitution. If that had thought proper to go on to form a constitution for the internal government of the State, would that have bound the people, or been recognized by the constituted authorities as the act of the people? No doubt, there might he a conven- *272 fion unlimited in its powers, and representing all the authority of the people. But when they are about to confer this high authority, certainly they ought to be aware that they are doing so.
I should not have considered this part of the subject so much at large, if I did not regard it as of the deepest practical importance to freedom and the security of our institutions. Why is it that to affect an amendment of our State Constitution, two thirds of both houses of two successive legislatures must concur, and in the mean time the proposed amendment must be published for three months ? Why is it that to call a convention of the people, two thirds of both branches of the Legislature must concur ? It is for the security of those fundamental institutions on which the rights of individuals,' and especially the rights of a minority, are supposed to depend. It is to prevent great changes by a mere numerical majority in the Legislature, acting perhaps hastily, under excitement and with partial information. It is to secure that the intended changes shall be brought fully to the view of the people, and canvassed before them ; that their opinions may be informed and their judgements determined respecting them ; and from the forms that must be gone through, that time enough for these purposes shall be allowed. It is to the people thus acting that we attribute the character of sovereignty. But if a convention called for one purpose, may proceed to act upon others not committed to them, then all these guards of the Constitution will be rendered nugatory. When the convention is assembled, new projects may be started, which the people never contemplated, even in the most general way, as to come under its determination. The.most important changes may be made hastily, in which it is possible that if the matter were fairly before them, not one tenth of the people would concur. With what truth or propriety could it be said that these wore the acts of the people 1 It is to be remarked that the members of a convention are not subject to the same degree of responsibility as tho officers of Government. If the constituted authorities of government should contumaciously, or capriciously, or erroniously, refuse to recognize and enforce that as the act of the people, which was in truth their act and within the purposes for which they had assembled their convention, the most ample remedy would remain in the hands of the people themselves, whose controul over these authorities is absolute. But if a convention be not thus limited, it is easy to conceive that an act may be done in relation to a matter which a majority of the actual people never intended to entrust to the convention, and of which a majority of the people disapprove ; and yet if that *273 majority be not large enough to command a vote of two thirds of both branches of the Legislature, for the purpose of calling another convention to annul the act, it may remain fixed on the country forever, without the possibility of being shaken off. And would you call this institution of a minority, the act of the people 1
If by their agents (two thirds of the members of both branches of the legislature) the people are not allowed to impose restrictions on their convention, they cannot do so at all. It will, most evidently, he practically impossible for them to do so by their votes at elections. How is it possible that there should have been such concert among the people as would have enabled them to specify the purposes for which the last convention was assembled 1 Perhaps, not a hundred voters would be found to agree in the same instructions. And may not two thirds of both branches of the Legislature be safely entrusted to speak the voice of the people on this behalf ?
To say that the power of conventions cannot be limited, would be to render the people distrustful of them and unwilling to assemble them, and will be likely to have the effect of hindering or defeating appeals to the people when the highest public interests require their interposition. It is true, that such appeals are not contemplated as likely to be frequently made. It is one of the advantages which we suppose ourselves to possess, that time and difficulty are interposed in calling into action that supreme irresistable uncontrollable authority which must necessarily exist in every state ; which in other countries is lodged in governments and may be daily called into action for purposes of oppression ; and which would exist in government in our own country, if there were no appeal to the higher authority of the people. It is one of our securities for freedom, that the sovereign rarely interposes, and never unless there be a dilemma worthy of such interposition. But' certainly he ought not to be prevented from interposing from an inability to controul the instruments by which he makes his interposition effectual.
But it is a different question •whether the convention in the present instance exceeded the purposes for which it was assembled. The act of the Legislature for calling a convention directs “ that a convention of the people of the said State shall be assembled &c. to take into consideration the several acts of the Congress of the United States imposing duties on foreign imports for the protection of domestic manufactures, and for other unauthorized objects; to determine on the character thereof, and to devise the means of redress ; and further in like manner to take into consideration such acts of the said *274 Congress laying duties on imports, as maybe passed in amend» ment of or substitution for the acts aforesaid ; and also all oth. er laws and acts of the government of the United States, which shall he passed or done for the purpose of more effectually exe* cuting and erf arcing the same.” Congress did repeal the laws then in force for imposing duties, and passed another law in substitution therefor. An act of Congress was also passed entitledan act further to provide for the collection of duties on imports.” To consider of this act; to determine on its character, and to provide the means of redress against it, were within the express objects for which the convention was assembled. It accordingly passed an Ordinance to “ nullify” the act in question, directing the legislature to take such measures as might be necessary to prevent its being enforced within the limits of the State. Now certainly every means which was in good faith calculated and intended to prevent the operation of that act, was within the limits of the powers of the convention, and it would ill become this Court to examine with inordinate and suspicious scrutiny the means which that body thought proper to employ. I have examined the act with much attention, and without entering now into its details it is enough to say that in all its provisions it is evidently founded on the implied denial of the sovereignty of the States. It was plainly intended to defeat the effect of an act of this State, done in its sovereign capacity, and to render its citizens and constituted authorities responsible for their acts done under the authority of the sovereign act of the state. Certainly it was both appropriate and necessary to the arresting of the operation of that act, that the officers of the State itself should acknowledge the sovereignty of the State. If officers in the exercise of their functions denied that sovereignty and the authority of its sovereign act, they might feel bound to carry into effect the very law which the State had attempted to annul.— It was to counteract this, that the Legislature was authorized to require an oath of allegiance, which is of itself a recognition of sovereignty. This had a plain and direct reference to the object which the convention was authorized to effect. The only doubt arises from this, that the authority given to the legislature is not made commensurate with, the act the operation of which was intended to be arrested — that is to say, that although the act (known as the force Bill) should be repealed, yet according to the terms of the Ordinance, this power would continue to exist in the Legislature, indefinitely, as part of the constitution. If the force Bill should be repealed, would there not he an end of the authority of the Legislature, and of the Ordinance intended to nullify it ? And ought not every *275 provision of the Ordinance to be so construed as to have reference to its avowed and authorized object ? On this point I do not think it important to give an opinion.
But independently of the authority of the Ordinance, I see nothing in the act of the legislature inconsistent with the constitution of the State. The constitution prescribes that “all persons who shall be chosen or appointed to any office of profit or trust, before entering on the execution thereof, shall take the following oath, &c.” I am. disposed to concur with the venerable Judge who heard the case of M’Cready and Hunt below, that the oath prescribed by the Constitution was not intended to apply to military officers. Undoubtedly if there were nothing else in the clause to raise a doubt, I should hold clearly that military officers come within the description of an “ office of profit or trust.” But a part of the oath is, that the officer swear that he is “ duly qualified according to the constitution of this state” to exercise the office. Now the constitution prescribes no qualification for military officers, and the words would be perfectly nugatory if applied to them. It would seem that as the legislature must of necessity prescribe the qualification, they should also prescribe the evidence which, the officer should give of his possessing it. The words I have referred to certainly raise an ambiguity, and an exposition nearly cotemporaneous was given by the act of the Legislature passed in 1794, by which an oath substantially differing from that of the constitution is prescribed to military officers. That oath alone has been taken from that time to the present, a period of thirty years. Legislative exposition is entitled t® some z'espect, and if universal and long continued practice be sufficient to settle the meaning of a doutful law, it would seem to have fixed the construction of the constitution in this instance. But independently of this, I am cleai; of the authority of the legislature.
The legislature possesses all legislative power, unless it be restricted by the constitution, and if the constitution had prescribed no oath of office, doubtless the legislature might enact one. There is certainly nothing in the plain terms of the constitution which I have quoted, to restrict the legislature from adding any other oath of office which they may think expedient or necessary. It is argued, as was said by Judge Nott in Cohen v. Hoff, 2 Const. Rep. Tread. that affirmative words often imply a negative. Undoubtedly they do, from the very nature of the provision and subject matter. They plainly did so in that instance. The question was of the authority of an act of the legislature authorizing the Governor to appoint a Judge for the time being, in case of the sickness of a Judge *276 on Circuit. The constitution provides that the Judges of the superior Courts shall be elected by joint ballot of both branches of the legislature, and hold their offices during good behavior. Now if the Judges (all the Judges of superior courts) are to be elected in this way and to hold by this tenure, it is plainly impossible that they should be elected in any other way of hold b.y any other tenure. The first article of the constitution provides that every free white man, of the age of twenty one years, having a certain qualification of property, shall be entitled to vote for members of either Branch of the legislature. Here the negative is necessarily implied, that such as have not those qualifications, shall not be allowed to votebe-cause otherwise the whole provision would be nugatory and unmeaning. So, by common consent it has been understood that when the constitution declares that no person shall be elected a member of either branch of the legislature unless he possess certain qualifications of age and property, no greater or other qualification could be required. But when the constitution says that the legislature shall meet annually or on the fourth Monday in November, has it ever been understood that they were restricted from meeting at any other time they may appoint 1 Is there any incongruity in requiring the oath prescribed by the constitution, and any other oath which the legislature may think expedient ? and are we to give a negative meaning to the words without any reason or necessity ? If the words of the constitution, however, were more doubtful than they are, I should hold myself concluded by the uniform exposition of them which has been given in practice ; not only in this State, but in many other States of the Union, and under the Government of the United States. A great number of instances of this sort have been pointed out in argument, especially by the Attorney General. It is not necessary to refer to these in detail. It is enough to say, that ever since this State has had a constitution, other oaths than that prescribed by the constitution have been required of public officers ; some of them required by laws existing previously to the adoption of the present constitution, and one of which was taken by myself previously to entering on the office of Chancellor. In 1794, four years after the adoption of the constitution, an oath substantially differing from that of the constitution, was prescribed to officers of the militia. In 1816, a special oath was prescribed to justices of peace, Sheriffs and Constables. The same thing has been done familiarly in other States whose constitutions prescribe oaths of office. So it has been under the government of the United States, and in McCullough v. Maryland, (4 Wheat. 416) the Chief Justice regarded the au *277 thority of Congress in this respect as-too clear for argument. And it will not do to say, as was done in argument, that the constitution of the United States prescribes no form of oath, and that Congress may therefore direct the form, retaining the substance. Many — I think all of the oaths prescribed by the acts of Congress, are different from that of the constitution in their whole substance and effect.
The strongest argument I have seen on this part of the subject is that contained in Mr. Leigh’s case. (Hen. and Munf.) It is to this effect; that if the legislature possesses this power, it may disfranchise individuals or classes at its pleasure. In times of party excitement, religious or political tests may be imposed, by oaths intended, not to secure fitness for the office or fidelity in the discharge of its duties, but for the purpose of prescription merely. I do not think our constitution liable to this reproach, but that it has guarded sufficiently against the evil. If the legislature, by an Act, should declare that a particular individual by name should be disabled to hold any office of profit or trust, would this be constitutional ? Clearly not ; I should think it a violation of that part of the constitution which declares that “no freeman of this State shall be taken or imprisoned, or disseised of his freehold, liberties or .privileges, but by the judgment of his peers or the law of the land.” Such an act would not come within the proper limits of legislative power; it would not be the lam of the land, but a sentence, inflicting a penalty. For my views inoré at large on this subject, I refer to my opinion in the case of Berney v. the Tax Collector of St. Philips and St. Michaels, decided by this Court in Charleston. It could make no difference that Ihe act included a number of individuals, or that the individuals were described as a class; provided it clearly appeared that the true object and purpose of the act was the disfranchisement of individuals, without reference to fitness for the office or fidelity in the discharge of its duties. But if the Legislature should pass a law that no one who had been convicted of an infamous offence should be capable of holding a military office, or that every officer before receiving his commission should swear that he had not been convicted of such an offence, would this be proscription and disfranchisement t I regret that the oath in question was called, in argument, a test oath, as a term of odium, as I think it derogated lrom the respect with which an act of the Legislature ought to be regarded in'a Court of Justice. It was explained to be that which requires opinion merely, religious or political, as a qualification for office. If there were an opinion that must necessarily affect a man’s faithful discharge of his duties in office, it Would *278 be no hardship .tlmt he should be excluded from office on account of his opinions. But according to my conception of the oath, it has no reference to opinion, but to conduct, and the faithful discharge of the duties of office.
To what does the tie of allegiance bind ? And to what does the officer or citizen swear who takes the oath of allegiance ? I think this has been sufficiently indicated in the course of this opinion. Allegiance means obedience — the first and highest obedience. In common discourse, perhaps, there has been some vague notion of a feeling or sentiment connected with this term ; but we are not to suppose that the Legislature in. tended to enact a sentiment. He who swears allegiance to, the State, swears that he will obey every act of the sovereign authority of the State, and also all laws and constituted autho. rities made and acting in pursuance of the sovereign authority.
There is a distinction to be taken between a private person and a public officer. A private person who swears allegiance,, swears to obey the laws; yet it is not every breach of law, that constitutes a breach of allegiance. A man who fails to perform his contract, or who commits an assault and battery, has never been thought to violate Iris allegiance. What then constitutes the violation ? Only the commission of those acts which under our institutions would amount to treason. To levy war within the State against its sovereign authority, for a general purpose, or to adhere to its enemies and give them aid and comfort. This is the only definition whiph, with us, it is possible to give to a breach of allegiance. No doubt an individual who should conspire — or in the words of the English Statute of Edw. 3, “compass or imagine” the overthrow of the sovereignty of the State, -would be guilty of a moral breach of his allegiance. But this could not come under the cognizance of law, till it were manifested by an overt act. And it may be observed that the Statute of Edward, in defining treason, enacts only the common law, though it restricts the num. her of offences which before were supposed to amount to treason. In the feudal understanding of the term, allegiance was held to bind to the feudal duties, and especially to military ser», vice. But as I have observed, the feudal sense has long been departed from. A man who should neglect to pay his taxes, or the militia man, who on being summoned into service, should fail to obey, would never be said to be guilty of a violation of his allegiance. He is bound to submit to the laws without resisting them by armed force. In my understanding, then, a private person who should take an oath to be faithful and bear true al-tegianee to the State of South Carolina, in the words of that *279 proposed as an amendment to the Constitution,so long as he shall continue a citizen thereof,” would swear to no more than this — that he will not commit treason against the State, while he continues domiciliated within its Territory. The obedi. enee of a public officer must amount to something more than this. He is not only to submit to the law, but is entrusted to execute and enforce it. An oath of allegiance, or paramount obedience, theD, binds him to execute and enforce every act of the sovereign authority of the State. But here again, it is not every omission of neglect -or infirmity that would amount to a violation of allegiance. A militia officer who should simply evade his duty, would not be said to have violated his allegiance ; but if he should, in his official capacity, obey any authority in opposition to that of the State, as having a higher title to his obedience, this would be a violation. So, if any civil officer should refuse to execute an act of the people of the State, on the ground that he was forbidden by superior authority, this would be a plain violation of his oath of paramount obedience. This would certainly apply to the instance which was put in argument, of an officer who should refuse to execute an act of secession or nullification, and should continue to enforce the federal laws which he was forbidden to enforce, on the ground of superior duty to the Constitution of the United States. And no doubt, this, and nothing else, was intended by the Legislature.
And is this requisition on the part of the State severe or unreasonable? If the principles which I have endeavored to explain be just; if the State be well founded in her claim to sovereignty, it is plainly no more than she has a right to exact of her officers, and what every other sovereign State does exact. But it is said that on this subject opinions are divided, and that it is unreasonable, and a disfranchisement, to exclude from office those whose opinions differ from the prevailing opinion of the State, Even supposing the claim to be unfounded, however, yet let it be recollected that the State — that majority of the people which, acting according to the'forms of the constitution, has a right to exercise the authority and speak the voice of the State — believes and has declared itself to be sovereign, and that its highest and dearest interests require that sovereignty to be sustained. Is it wonderful that it should re'quire somo security that its own officers, whom it entrusts with its authority, should not uso that very authority to defeat its claim, and if there be any of its citizens whose opinions would lead them to disclaim and surrender that sovereignty, these should be excluded from office?
But as í have already said, the oath has nothing to do with. *280 opinions, but with conduct. But can one who docs not believe in the perfect sovereignty of the State as it has been explained, consciensiously take the oath 1 I answer that he may certainly do so without any violation of his oath, provided his conduct afterwards shall be in conformity to it. It is a perfectly well settled principle of public law, that an oath imposed as a qualification for office, if there be no further exposition of the law-giver’s intention, is taken to refer to the execution of the duties of the office, and binds no longer than the party continues in office. No publicist has ever supposed that a person enlisting in a foreign military service, and taking an oath of allegiance, was bound by that oath longer than until he left or was discharged from the service, or that he was guilty of any immorality in taking the oath. This has been habitually done even by the subjects of those States in which allegiance has been held to be perpetual and inalienable. Let me here remark, this was urged as an instance of divided allegiance. But this is not so ; while he continues in the foreign service his allegiance is perfect and complete ; he is bound to obey the authority under which he has enlisted, in preference to any other authority on earth. Only, if a war should take place between that power and his own country, he must leave the service or commit a violation of his natural allegiance. So men enter into the civil service of foreign States and swear allegiance.
So it is universally agreed that a man residing in a foreign country owes allegiance to it so long as he continues to reside there. If he should be required to swear allegiance, without further explanation the oath would of course be understood to refer to his continuance in the country, and would be discharged by his returning to his own country; and this is not an instance of divided allegiance. While ho remains there, he must obey the sovereign in whose dominions he is, in preference to any other authority, even that of his own country.
It is on a principle somewhat similar, that by the English law, treason cannot be committed by an act done in obedience to a King de facto. If a man should swear allegiance to such an one, even although he thought him an usurper, he would be guilty of no violation of his oath, if he continued to obey him in good faith, and did nothing to bring about his overthrow ; though he might regard himself as guilty of a breach of duty in tying up his own hands from aiding the restoration of the rightful authority. But the restoration of the rightful King, without his agency, would discharge him of his oath. Here would be no divided allegiance.
*281 The citizen of a State, entering into the military or naval service of the United States and.taking the oath of allegiance prescribed by the acts of Congress, even although believing his State to be sovereign and entitled to command his obedience in the last resort, would certainly be guilty of no violation of his oath, while he acted in conformity to it; nor do I know that he would be guilty of any violation of morality or propriety. He would swear to obey the authorities of the United States in preference to any other authority, even that of his own State, so long as he should continue in that service. The consequence would be, that if his service should be at anytime commanded in opposition to the sovereign authority of his own State, he must either leave the service, or betray his duty to his State, or violate his oath. And probably this binds to nothing ,to which an honorable' and conscientious man would not regard himself as bound without the oath. Certainly it could not be considered defensible that he should use the force intrusted to him by the authorities of the United States in resisting those authorities, even though at the command of his own State.
And thus according to my understanding of it, the citizen who accepts office under the State and swears allegiance to her, swears that while he continues to hold that office, he will obey, execute, and enforce every act of the sovereign authority of the State. A citizen who believes the United States a single consolidated nation entitled to exclusive allegiance, will commit no violation of his oath while he continues thus to obey and execute. Until an act of the people of the State shall come in conflict with what he conceives to be the higher authority of the Constitution and laws of the United States— or to use the terms in common use, until an act of nullification or secession shall be passed — there will be no conflict of duties. Until there shall be such conflict, he cannot doubt but that he is bound to obey and execute the acts of the people in convention ; and until then, his very allegiance will bind him to obey and give effect to the Constitution of the United -States, and the laws made in pursuance' of it. He may perhaps pass 'his life in office, before such a conflict shall occur-; but when it does occur, undoubtedly he will be under the necessity either of violating his duty to the United States, or of violating his oath, or of resigning his office.
And is this a hard or unreasonable condition which the State has imposed on her citizens ? Claiming to be sovereign, and determined to assert that sovereignty, could she have done less 1 Would it not be merest imbecility to entrust any portion of her authority to those who might make use of that ver *282 ry authority to surrender her claim and defeat her most solemn act ? Might not an officer justly consider himself bound to this course, even if no oath were imposed ? Receiving trust or emolument of the State, shall he use the authority confided to him to defeat the purposes for which it was entrusted, even although he may believe her mistaken in her belief and pretensions as to her own condition and character? Believing herself to be sovereign, she must act consistently with that belief. When the powers of the earth are in contest, I may favor with my wishes him whose cause 1 believe to be the right, and if there be nothing to forbid, may enlist myself in his service; but I should justly be accounted no less than infamous, were 1 to enter the service of one, and accept office at his hands, that I might, even although I thought him a rebel and a pretender, use the trust and authority thus confided, more effectually to defeat and destroy him.
I am of opinion that tho motion in the case first stated, should be granted, and that in tho latter dismissed.
WILLIAM HARPER.